Parker C. J.
drew up the opinion of the Court.* There are grounds upon which we are satisfied that' this action cannot be maintained, which were virtually decided in the former case between these parties ; not indeed virtually only, for it is most manifest that the present action cannot be sustained on the facts proved, without a direct contradiction of the principles laid down in the former case.
How is this ? It was decided before, that an action would not lie upon the personal contract of the subscribers to the stock, to recover an assessment made before the whole capital was taken up, except so far as it might be necessary to raise money to defray the expenses preliminary to the complete organization of the company, which could not take place until there was a full subscription, and this, because by the act of incorporation it was made essential to the power of assessment for the general objects and purposes of the institution, that there should be a capital represented by 5000 shares of $ 100 each to be acted upon by the assessment.
Upon revising that opinion, we are entirely satisfied it was correct.
How stands the present action ? It is brought to recover the amount of an assessment made to cover the expense of materials purchased or contracted for, to be used in carrying forward and completing the general purposes of the institution, it being agreed that the former assessment was sufficient to defray all the preliminary expenses.
Has then the whole number of shares been subscribed for, so that the capital stock amounts to the sum prescribed by the legislature in the act of incorporation, as the fund to be obtained before the full power of the corporation should be exercised ? It is most certain' there was, at the time of this assessment, and still is, a deficit of thirty shares at least, there being no *199 authority in Samuel Endicott to subscribe for Charles M. Endicott, or Nathan Endicott, or Timothy Endicott. With respect to the two first, the evidence is conclusive against any authority in Samuel, and with respect to Timothy, there is no evidence of authority.
It is argued that Samuel Endicott, who thus acted without authority, is himself liable to the amount of these shares ; but "f so, how and to what extent is he liable ? He cannot be made a subscriber or compelled to take shares ; no certificates can be issued in his name ; he can be liable only in a special action on the case, for assuming to act in behalf of his nephews without any authority from them. This cannot be considered as a substitute for or equivalent to a subscription.
Suppose a majority of the shares were thus subscribed for, could the corporation go on ? could the liability to an action for damages, altogether uncertain in their amount, constitute any part of the fund of $ 500,000 established by the act ?
This deficiency of thirty shares in the subscription has the same effect in suspending the power of assessment, as a larger number would have ; the principle is the same.[1] In obtaining the additional subscription since the decision in the other case, this deficiency, being known, and its effect clearly deducible from the positions laid down by the Court, should have been supplied.
It is not necessary to consider the legal consequence of the insolvent shares not being provided for by the new subscription. If there had been originally a full subscription, mmá jiae, tne unexpected failure of some of the subscribers before or after the corporate powers were exercised, ought not to impede the operations of the company. They would assess all the shares, and take legal measures to compel the payment, and any final deficiency would be supplied by the company, by additional assessments, if necessary. But there being but little more than half the stock subscribed, including the insolvent shares, so that- it became necessary, in order to enjoy the power of assessment, that a further subscription should be obtained, and it being known that 200 shares were wholly inefficient, it certainly admits of question whether these should stand as part *200 of the fund or capital stock. These 200 shares were treated by the officers of the company as dead shares before th .) new subscription. At the annual meeting in 1828, they were deby the treasurer, in his exhibit, from the whole numbei . subscribed, as shares on which assessments were not payable, as were also the shares subscribed for without authority. How then can they be enumerated as part of the 5000 shares ? It is evident that the subscription was not full, to any legal purpose, when this assessment was made. It would have been quite as well to have set down the whole number of deficient shares to some feigned name, representing no person in actual existence. The facts affecting these delinquent shares were known to those who represented the corporation, at the time of the second subscription, and at the time of the assessment.
As to the more general ground taken by the defendant’s counsel, that the contract has become inoperative by reason of the supposed inability of the corporation to execute the purposes of the act, in the manner and with the benefit expected and intended by those who embarked in the project and undertook to pay for the shares they subscribed for, — as it was not pretended that there was any designed misrepresentation by those who procured the subscription, we think the defence could not be sustained on this ground. If there was a disappointment in regard to the degree of benefit expected from the project, no doubt it was mutual. The defendant appears to have had as much agency in the original plan, as any of the agents of the corporation. If a court of equity, with full chancery powers, might interpose to prevent the execution of a ruinous project entered into by a company, when it shall have been ascertained that the proposed advantage cannot be attained, certainly as a court of law we have no such power.
As to the effect of the vote of the corporation to limit the personal liability of subscribers to one third of the prescribed amount of a share, whether for this cause the contract of the subscribers may be avoided, we do not think it necessary in this case to decide. The original subscribers had a right to expect there would be available funds to the amount of $ 500,000 applicable to the purposes of the institution, if necessary to carry it into full effect; without depending upon the value of *201 the stock in the market; and yet it is difficult to say thax the diminution of their liability by a vote of the corporation shall operate an entire discharge, particularly as this personal liability is not exacted by the act of incorporation. Believing this action well settled upon the other point, we give no opinion upon this. We are well satisfied that this assessment cannot be sustained upon the principles which upheld the other, because it was not necessary for preliminary expenses ; the objects and purposes of this assessment being to pay for contracts and liabilities which there was no authority to enter into and incur, when they accrued.

Verdict set aside.

 Putnam J. did not sit in the case

See Central Turnpike Corp. v. Valentine, 10 Pick. 142.