EBENEZER HARDS v. PLATTE VALLEY IMPROVEMENT
COMPANY.

| 35 | 263 |
|----|-----|
| d44 | 291 |
| 35 | 263 |
| 53 | 418 |

[FILED SEPTEMBER 28, 1892.]

1. **Corporations:** CAPITAL STOCK: SUBSCRIPTION: ACTION TO
RECOVER. Where the subscription contract of a proposed cor-
poration fixes the capital stock at a certain sum—as $4,000,
divided into shares of $100 each—the whole amount of capital
so fixed must be fully secured by a *bona fide* subscription before
an action will lie upon the personal contract of the subscribers to
the stock to recover an assessment on the several shares, unless
there is a provision in the subscription contract to proceed in
the execution of the main design before the whole amount of
capital is subscribed.

2. ———: ———: WAIVER OF CONDITIONS OF CONTRACT: EVI-
DENCE. There is testimony in the record which tends to show
that the defendant waived the conditions of the contract in re-
spect to the amount of stock to be subscribed before entering
upon the main purpose of the corporation, viz., the construction of
a public hall, and this should have been submitted to the jury.

3. **Directing Verdict.** The court erred in directing a verdict.

ERROR to the district court for Merrick county. Tried
below before POST, J.

*Rice & Watson,* and *J. C. Patterson,* for plaintiff in error.

*A. Ewing,* and *J. W. Sparks, contra.*

MAXWELL, CH. J.

This is an action brought by the defendant in error
against the plaintiff in error to recover on a subscrip-
tion for stock to an association, the general nature of whose
business was declared in the articles of incorporation "shall
be the erection and operation of a suitable hall for the use
of societies, organized meetings, or such other purposes as
the trustees may see fit for the benefit of the stockholders."
The petition alleges that the amount of capital stock was

fixed at $4,000, which was all in good faith subscribed be-
fore the bringing of this action.

The defendant, in the third paragraph of his answer,
after denying that the plaintiff below is a valid corporation,
says: "And defendant further answering says that he ad-
mits that on or after the 23d day of September, 1886, he
subscribed for one share of stock for $100 in said pre-
tended plaintiff corporation, but alleges that said subscrip-
tion by said defendant for said share of stock was made
with the express agreement and understanding by and be-
tween said pretended corporation and said defendant that
the full amount of the capital stock of said pretended, and
at said time prospective, corporation had been taken and
subscribed for, including said defendant's subscription, by
good, lawful, solvent, and *bona fide* subscribers, and that
said subscription and contract thus made by and between
said pretended and prospective corporation and said defend-
ant, was conditional and was not to be valid and binding
upon said defendant unless said full amount of capital
stock had been and was subscribed for, including said de-
fendant's subscription; and defendant further says, that
under and by virtue of said conditional agreement and con-
ditional subscription for said stock, but without any knowl-
edge upon his part that said full amount of capital stock
had not been subscribed, or without waiving or intending
to waive any of his rights under and by virtue of the
terms of said conditional agreement and subscription for
said stock, he paid six months' assessments on installments
of $2.50 each, commencing in September, 1886." He
then proceeds to allege that there were certain misrepresen-
tations made to him in regard to the proposed lease of a
certain lot for ninety-nine years, and that the building
plans had been modified, etc.

The testimony tends to show that a contract for a per-
petual lease for the lot spoken of was obtained, but that there
was a mortgage for a considerable amount on the property.

The testimony also shows that but thirty-seven shares of stock, in the aggregate $3,700, were in good faith sub-scribed when the work was undertaken and the building erected and suit brought.

In *Estabrook v. Omaha Hotel Co.*, 5 Neb., 78, Judge GANTT quoted with approval the case of *Fry's Ex'r v. Lexington, etc., R. Co.*, 2 Met. [Ky.], 323–4, that "where a given amount of stock is required to be subscribed before the corporation is authorized to go into operation, this requisition must be regarded as an indispensable condition precedent. Each subscriber undertakes to pay the amount of his subscription only in the event and upon the condition that the whole amount of the capital stock required by the charter to enable the company to organize and commence operations in its corporate capacity shall be subscribed. And in *Livesey v. Hotel Co.*, 5 Neb., 66, 67, the same able judge says: "The rule seems to be well established, that when the charter or subscription contract specifically fixes the capital stock at a certain amount, divided into shares of a certain amount each, the whole amount of capital so fixed and required for the accomplishment of the main design of the company must be fully secured by a *bona fide* subscription before an action will lie upon the personal contract of subscribers to stock to recover an assessment levied on the shares of stock, unless there is some clear provision in the contract to proceed in the execution of the main design with a less subscription than the whole amount of capital specified. This rule seems to be founded on the principle that, by the terms of the grant to the corporation, it is essential to the power of assessment for the general objects and purposes of the institution that the whole capital stock required by the condition precedent must be represented and acted upon by the assessment. This doctrine has undergone an exhaustive discussion in many cases, and it is not deemed necessary to bring into view the arguments in support of it. (*Salem Mill-dam Co. v. Ropes*, 6 Pick. [Mass.], 23; *Id.*, 9 Pick., 195; *Cabot & West*

*Springfield Bridge v. Chapin*, 6 Cush. [Mass.], 53; *Schurtz v. S. & T. R. Co.*, 9 Mich., 269; *Topeka Bridge v. Cummings*, 3 Kan., 76; *Somerset Railroad Co. v. Clarke*, 61 Me., 384; *N. H. Central R. Co. v. Johnson*, 30 N. H., 404; *Peoria & Rock Island R. Co. v. Preston*, 35 Ia., 118.) And the rule is the same in England. (*Fox v. Clifton*, 6 Bing. [Eng.], 776; *Pitchford v. Davis*, 5 M. & W., 2; 4 Moody & M., 151.)" Those cases were very fully considered and the authorities examined.

It may not be improper to state that the very able judge before whom the Nebraska cases cited were tried in the district court, after the argument in this court became convinced that he had erred, and when but one of his associates was present, and before the opinions were written, announced that the cases would be reversed, the court being unanimous.

Second—There is some proof tending to show that it was proposed to increase the capital stock to $6,000, and some of the shares were taken on that basis. It is evident there was no actual change in the proposed amount of capital stock; that still remained at $4,000, and the proposition to increase the stock to $6,000 was not adopted. It is unnecessary, therefore, to consider that phase of the case.

Third—There is some testimony tending to show that the defendant below waived the conditions of the contract of subscription as to the amount subscribed so as to permit the erection of the building in question with less than $4,000 capital stock subscribed. This should have been submitted to the jury for their consideration. The court, therefore, erred in directing a verdict and rendering judgment thereon. The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

NORVAL, J., concurs.

POST, J., did not sit.