## Lincoln Shoe Manufacturing Company v. Frank L. Sheldon.

FILED MARCH 5, 1895.    No. 6217.

1. **Corporations:** SUBSCRIPTION CONTRACTS: CONSTRUCTION. A manufacturing corporation sued Sheldon on an instrument in wr ting, signed by himself and others, as follows: "For value received we, the undersigned subscribers, hereby bind ourselves to purchase the number of shares of stock set opposite our re-spective names in the Lincoln Shoe Manufacturing Company at fifty dollars per share; one-fourth of the amount so subscribed * * * to be paid when the foundation of the building is laid; one-fourth when the building is under roof, and the balance on call of the directors." Sheldon demurred to the petition on the ground that it did not state a cause of action. *Held*, (1) That by the contract in suit Sheldon became a subscriber to the cap-

ital stock of the manufacturing company ; (2) that Sheldon's contract was not a contract to purchase stock of the corporation ; (3) and if it had been, the manufacturing company's measure of damages would be the contract price of the stock, it having tendered the stock to Sheldon before suit was brought.

2. Sales: BREACH OF CONTRACT: DAMAGES. Where a vendee refuses to perform the vendor has either of two remedies. He may keep the property made the subject of the contract and sue the vendee for damages for a breach of his contract, and in such case his measure of damages will be the difference between the contract price of the property and its actual value at the date of the vendee's breach of the contract; or the vendor may tender the property made the subject of the contract to the vendee, and then in a suit upon the contract the vendor's measure of damages will be the contract price of the property.

3. Corporations: CHARTERS. In this state the legislature does not by a special act charter a corporation, but all corporations are formed under general laws, and these laws and the articles of incorporation adopted in pursuance of and in conformity with such laws constitute the charter of a corporation in this state.

4. ———: SUBSCRIPTION. The fact that all the stock authorized by the articles of incorporation of a manufacturing company formed under sections 37, 38, and 39, chapter 16, Compiled Statutes, 1893, entitled "Corporations," has not been subscribed, is not a defense to a subscriber for part of such stock when sued on his contract of subscription, if ten per cent of the stock of such manufacturing corporation has been subscribed.

5. ———: ———. *Livesey v. Omaha Hotel Co.*, 5 Neb., 50, *Hale v. Sanborn*, 16 Neb., 1, and *Hards v. Platte Valley Improvement Co.*, 35 Neb., 263, distinguished.

ERROR from the district court of Lancaster county. Tried below before HALL, J.

See opinion for statement of the case.

*Thomas C. Munger*, for plaintiff in error:

It was unnecessary to allege that all the stock had been subscribed. It was sufficient to allege that more than ten per cent of the stock had been subscribed. (Compiled Statutes, ch. 16, sec. 39; Cook, Stock & Stockholders, secs. 177,

178; *Abbott v. Omaha Smelting Co.*, 4 Neb., 416; *Hunt v. Kansas & Missouri Bridge Co.*, 11 Kan., 412; *Port Edward, C. & N. R. Co. v. Arpin*, 80 Wis., 214; *Hoagland v. Cincinnati & F. W. R. Co.*, 18 Ind., 452; *Schenectady & S. P. R. Co. v. Thatcher*, 11 N. Y., 102; *Hamilton & D. P. R. Co. v. Rice*, 7 Barb. [N. Y.], 166; *Boston, B. & G. R. Co. v. Wellington*, 113 Mass., 79; *Hanover, J. & S. R. Co. v. Haldeman*, 82 Pa. St., 36; *Penobscot & K. R. Co. v. Bartlett*, 12 Gray [Mass.], 244; *New Haven & D. R. Co. v. Chapman*, 38 Conn., 65; *Illinois River R. Co. v. Zimmer*, 20 Ill., 564; Beach, Corporations, p. 866, sec. 535; *Hale v. Sanborn*, 16 Neb., 1.)

There was a sufficient averment to show that plaintiff was organized under the manufacturing company statute. (*Port Edward, C. & N. R. Co. v. Arpin*, 80 Wis., 217; Morawetz, Corporations, sec. 38; *Dorsey v. Hall*, 7 Neb., 460; Maxwell, Code Pleading, pp. 379, 393; Bliss, Code Pleading, pp. 208–213.)

The contract was a subscription. Plaintiff would be entitled to recover if it were a contract of purchase. (3 Parsons, Contracts, 208*; Newark, Sales, sec. 391; *Wasson v. Palmer*, 17 Neb., 330; Thompson, Stockholders, sec. 105; Cook, Stock & Stockholders, sec. 52; *Vanderheyden v. Mallory*, 1 N. Y., 459; *Buffalo & J. R. Co. v. Gifford*, 87 N. Y., 294; *Peninsular R. Co. v. Duncan*, 28 Mich., 130; *Oler v. Baltimore & R. R. Co.* 41 Md., 591; *Beene v. Cahawba & M. R. Co.*, 3 Ala., 660; *Penobscot R. Co., v. Dummer*, 40 Me., 172; *Haskell v. Sells,* 14 Mo. App., 91; *Cross v. Pinckneyville Mill Co.,* 17 Ill., 54; *Athol Music Hall Co. v. Carey*, 116 Mass., 471; *Hartford & N. H. R. Co. v. Kennedy*, 12 Conn., 499; *Stuart v. Valley R. Co.*, 32 Gratt. [Va.], 154; *Busey v. Hooper*, 35 Md., 28; *McClure v. People's F. R. Co.*, 90 Pa. St., 269; *Cass v. Pittsburg, V. & C. R. Co.*, 80 Pa. St., 31; *Robinson v. Jennings*, 7 Bush [Ky.], 630; *Skowhegan & A. R. Co. v. Kinsman*, 77 Me., 370; *Connecticut & P. R. R. Co. v. Bailey*, 24 Vt., 465;

*Sagory v. Dubois*, 3 Sandf. Ch. [N. Y.], 466; *Minneapolis Threshing Machine Co. v. Davis*, 40 Minn., 110.)

A proposition to subscribe, even to a company to be formed in the future, is valid. (*Starrett v. Rockland Fire & Marine Ins. Co.*, 65 Me., 374; *Buffalo & J. R. Co. v. Gifford*, 87 N. Y., 294; *Minneapolis Threshing Machine Co. v. Davis*, 40 Minn., 110; *Penobscot R. Co. v. Dummer*, 40 Me., 172; *Athol Music Hall Co. v. Carey*, 116 Mass., 471; *Ashuelot Boot & Shoe Co. v. Hoit*, 56 N. H., 548; *Cross v. Pinckneyville Mill Co.*, 17 Ill., 54; *Haskell v. Sells*, 14 Mo. App., 91; *Kirksey v. Florida & G. P. R. Co.*, 7 Fla., 23.)

The subscription in this case was not to a corporation to be formed but to one then existing. The defendant is liable. (Beach, Corporations, sec. 64; Cook, Stock & Stockholders, secs. 69, 70.)

The contract should be construed a subscription. (*Spear v. Crawford*, 14 Wend. [N. Y.], 20; *Lake Ontario, A. & N. Y. R. Co. v. Mason*, 16 N. Y., 451; *Robinson v. Jennings*, 7 Bush [Ky.], 630; *Waukon & M. R. Co. v. Dwier*, 49 Ia., 121; *Skowhegan & A. R. Co. v. Kinsman*, 77 Me., 370; *Nulton v. Clayton*, 54 Ia., 425; *Connecticut & P. R. R. Co. v. Bailey*, 24 Vt., 465; *Sagory v. Dubois*, 3 Sandf. Ch. [N. Y.] 466; *Fry's Executor v. Lexington & B. S. R. Co.*, 2 Met. [Ky.], 314; *Starrett v. Rockland Fire & Marine Ins. Co.*, 65 Me., 374; *Kirksey v. Florida & G. P. R. Co.*, 7 Fla., 23, 68 Am. Dec., 426; *Ashuelot Boot & Shoe Co. v. Hoit*, 56 N. H., 548; *Stuart v. Valley R. Co.*, 32 Gratt. [Va.], 154; *Busey v. Hooper*, 35 Md., 28.)

*Pound & Burr, contra:*

The fact that the agreement was entered into after incorporation shows it to be an agreement to purchase, as it purports to be. (*Thrasher v. Pike County R. Co.*, 25 Ill., 393; *St. Paul S. & T. F. R. Co. v. Robbins*, 23 Minn., 440; *People's Ferry Co. v. Balch*, 8 Gray [Mass.], 303.)

The measure of damages is the same as in any other

contract for the sale of personal property.   In failing to state what the value of the stock was, or is, the petition fails to state a cause of action. (*Thrasher v. Pike County R. Co.,* 25 Ill., 393; *Quick v. Lemon,* 105 Ill., 578; *Rhey v. Ebensburg & S. P. R. Co.,* 27 Pa. St., 261; *Mt. Sterling Coalroad Co. v. Little,* 14 Bush [Ky.], 429; *St. Paul S. & T. F. R. Co. v. Robbins,* 23 Minn., 440.)

The whole amount fixed by the articles must be subscribed, and without an allegation to that effect no cause of action is stated. (*Hale v. Sanborn,* 16 Neb., 1; *Hards v. Platte Valley Improvement Co.,* 35 Neb., 263.)

RAGAN, C.

The Lincoln Shoe Manufacturing Company brought this suit in the district court of Lancaster county against Frank L. Sheldon.   The petition, so far as material here, was in words and figures as follows:

"The plaintiff complains of the defendant and alleges that the plaintiff is a corporation duly organized and incorporated under the laws of the state of Nebraska for the purpose of manufacturing, selling, and dealing in boots and shoes of every description and kind and character and to deal in all branches common to that line of trade, and to that end to own all necessary real estate, buildings, machinery, and appliances necessary for said business, and having a capital stock of $100,000, divided into 2,000 shares of $50 each, of which more than ten per cent has been subscribed.

"2 That the said plaintiff corporation was organized under the general laws of the state of Nebraska relating to manufacturing corporations as well as that relating to corporations in general, as found in sections 37, 38, 39, and 123–144 of the laws of Nebraska (Compiled Statutes, 1891), and became organized and incorporated on the 10th day of February, 1890, and ever since has been, and is and was at the time hereafter mentioned, a corporation

in fact and conducted and carried on business as such corporation.

"3. On the 22d day of March, 1890, and for the purposes of manufacturing and dealing and buying boots and shoes and for the purposes named in the first paragraph of this petition and in consideration of the advantages thereof and of each other's subscriptions the defendant, with other persons, became a subscriber to the capital stock of the plaintiff by severally executing and delivering to the duly authorized representatives and agents and officers of the plaintiff company the following agreement in writing: 'For value received we, the undersigned subscribers, hereby bind ourselves to purchase the number of shares of stock set opposite our names in the Lincoln Shoe Manufacturing Company at fifty ($50) dollars per share; one fourth of the amount so by us subscribed respectively to be paid when the foundation of the building is laid; one fourth when the building is under roof; the balance on call of the directors. In consideration of the building being erected on the west half of the northeast quarter of section twenty-eight (28), town ten (10), range six (6), along the line of the Lincoln & Northwestern railroad. Witness our hands on this 22d day of March, 1890.'

"4. That the defendant signed and delivered the said above agreement and placed the number of shares opposite his name for which he subscribed, to-wit, the number of fifty shares for which he subscribed, and thereby agreed to take the number of fifty shares, each share being of the par value of $50, and agreed to pay the plaintiff thereof the sum of $2,500, as required by law and the terms of said agreement.

"5. That there was subscribed with the defendant greatly in excess of ten per cent of the said amount of capital stock as specified by the charter, and after the amount of ten per cent of the capital stock had been subscribed the plaintiff company commenced operations and adopted rules

and began the erection and equipment of a building for the purposes of the company and made preparations for the business of manufacturing and dealing in boots and shoes, and bought material and acted under their charter and as an incorporation, and after as before the subscription of the defendant.

"6. The plaintiff company was formed on the 10th day of February, 1890, and the articles of incorporation were duly filed the same day, a true copy of which are hereto attached and marked 'Exhibit A' and made a part of this petition. The plaintiff accepted the subscription of the defendant and proceeded with the work and business of its charter and organization. A board of directors was chosen and the other officers necessary to the corporation and provided by its charter were elected and qualified. By and on the 10th day of June, 1890, the foundation of the building in which the operations of the company were to be carried on was laid, and on the 1st day of September, 1890, the said building was erected and under roof. This building was the same building referred to and set forth in the agreement as set forth in paragraph 3 of this petition, and was so founded and erected and roofed on the land described and along the railway named in the agreement as above set forth. And the sum of one-fourth of the said amount so agreed by the defendant to be paid became due on the 10th day of June, 1890, and the one-fourth part also became due on the 1st day of September, 1890, and the plaintiff company requested and duly demanded the payment of the said sums and offered to deliver and tendered the certificates of stock to defendant before the beginning of this action, and now offers to deliver them to defendant, amounting in all to the sum of $1250 (twelve hundred and fifty dollars.)

"7. The plaintiff has performed all the conditions precedent in said agreement on its part. The defendant has not paid the said sum or any part thereof, and the plaintiff

therefore prays judgment against the defendant for the sum of $1250, as aforesaid, with interest thereon at the rate of seven per cent from the 1st day of June, 1890, on half the amount due, and from the 1st day of September on the other half due, and costs of suit."

To this petition Sheldon interposed a demurrer, the grounds of which were that the petition did not state facts sufficient to constitute a cause of action. This demurrer the court sustained, and rendered a judgment dismissing the manufacturing company's petition, to reverse which it has prosecuted to this court a petition in error.

Two arguments are relied upon here to sustain the judgment of the district court.

1. The first contention is that the contract of Sheldon made the basis of this suit is an agreement to purchase certain shares of stock of the manufacturing company, and not a subscription to the stock of such company; and that the measure of the manufacturing company's damages is the difference in the actual value of the stock and the price which Sheldon agreed to pay for it at the date of the breach of his contract; and since the petition does not allege what the value of the stock was at the date Sheldon refused to take it, that it does not state a cause of action. Is the contract of Sheldon a contract to purchase stock in the manufacturing company, or is it a contract of subscription to the capital stock of such corporation? Whether one or the other is a matter of construction for the court, and to be determined from the intention of Sheldon, gleaned from the contract itself and the law in force applicable to the subject-matter of the contract. The manufacturing company is a corporation organized under chapter 16, Compiled Statutes, 1893, entitled "Manufacturing Companies." Section 37 of that chapter provides that whenever any number of persons associate themselves together for the purpose of engaging in the business of manufacturing they shall make a certificate specifying the amount of capital stock necessary,

the amount of each share, the name of the place where the corporation shall be located, and the name by which it shall be known; that such certificate shall be certified and forwarded to the secretary of state and by him recorded; and when these things are done that the persons so associating themselves together are authorized to carry on manufacturing operations by the name they have adopted; and section 39 of the chapter provides: "The persons named in the certificate of incorporation, or a majority of them, shall be commissioners to open books for the subscription to the capital stock of said company, at such times and places as they shall deem proper, and the said company are [is] authorized to commence operations upon the subscription of ten per cent of said stock." It appears from the petition that on the 10th of February, 1890, certain gentlemen associated themselves together for the purpose of organizing the manufacturing company; that they made the certificate contemplated by said section 37 on that date and filed it with the secretary of state; and on the 22d of March afterwards Sheldon signed the contract sued upon in this case. The presumption then is that the gentlemen, or a majority of them, who executed the certificate of incorporation provided for by said section 37, after it was executed and filed with the secretary of state, opened books to enable persons, who might desire to do so, to subscribe for the capital stock of the corporation, and that the contract sued upon was made by Sheldon at such time. The law does not require that the capital stock of a corporation like this shall be subscribed before its certificate of incorporation is executed and filed with the secretary of state; indeed the statute contemplates that the certificate of incorporation shall be first made and filed and afterwards the stock books opened.

In *Haskell v. Sells*, 14 Mo. App. 91, Sells signed a paper in the following language: "'We, the undersigned, hereby severally subscribe for the number of shares set opposite our respective names to the capital stock of the Mis-

souri Cotton Seed Oil Company, a company to be organized
under the laws of the state of Missouri, and we severally
agree to pay the said company the sum of one hundred dollars
on each share. Twenty-five per cent to be paid on organiza-
tion of the company. Twenty-five per cent to be paid on
first day of September. Fifty per cent to be paid on the first
day of October, or as soon thereafter as the board of directors
shall call for it to be paid in.'" The court said: "The
subscription paper signed by Sells was an unconditional
agreement to take a certain number of shares. This, *prima
facie*, constituted the subscriber a stockholder. (Thompson,
Stockholders, sec. 105.)"

In *Waukon & M. R. Co. v. Dwyer*, 49 Ia., 121, the con-
tract sued on was in the following language: "'We, the
undersigned, do hereby agree to take stock in the Waukon
& Mississippi Railroad to the amount of the number of
shares set opposite to our names, respectively, subject al-
ways to the by-laws, rules, and articles of incorporation of
the Waukon & Mississippi Railroad.'" The court held
that the contract contained a promise to pay the amount of
the subscription, and that the subscriber became a share-
holder of the company by virtue of the subscription. (*Hart-
ford & N. H. R. Co. v. Kennedy*, 12 Conn., 499; *Penin-
sular R. Co. v. Duncan*, 28 Mich., 130.)

The language of the contract in suit is: "We, the un-
dersigned subscribers, hereby bind ourselves to purchase
the number of shares of stock set opposite our names in
the Lincoln Shoe Manufacturing Company at fifty dollars
per share; one-fourth of the amount so by us subscribed,
respectively, to be paid when the foundation of the build-
ing is laid; one-fourth when the building is under roof;
the balance on call of the directors." While it is true
that the word "purchase" is in the contract, yet we are
unable to construe this contract as a contract of sale of
stock. The corporation did not own any stock. The aver-
ments of the petition exclude the presumption that this

manufacturing company on the 20th of March, 1890, was the owner of any of its stock and that it agreed on that day to sell its stock or any of it to Sheldon. When we take into consideration the law under which this incorporation was organized; that it was authorized to commence business when ten per cent of its capital stock had been subscribed; that after its articles or certificate of incorporation had been filed with the secretary of state, that the persons executing such certificate had the right to open books for subscriptions to the capital stock of the corporation; that the contract bound the signer of it to pay one-fourth of the value of fifty shares of stock at fifty dollars a share when the foundation of the building to be used by the manfacturing company should be laid, and a like one-fourth when such building should be under roof, and the remainder of the value of said fifty shares at fifty dollars per share on call of the directors, we are forced to the conclusion that by the contract in suit Sheldon subscribed and agreed to pay for, in the manner stated in the contract, fifty shares of the capital stock of the manufacturing company. For the purposes of this case, however, we think it entirely immaterial whether the contract of Sheldon is one to purchase fifty shares of stock of this manufacturing company, or whether by the contract he subscribed for fifty shares of this stock. The petition alleges that before the bringing of this suit the foundation of the building to be used by the manufacturing company had been laid and such building was under roof, and that the manufacturing company demanded of Sheldon that he pay it $1,250, the agreed value of twenty-five shares of said stock, and at the same time tendered him certificates of the stock of said corporation for the amount of money claimed. So that if we should adopt the construction of this contract claimed by Sheldon he would still be liable to the manufacturing company for the agreed price of the shares of stock. As Sheldon's having agreed to purchase fifty shares of this

23

stock at fifty dollars per share, and the manufacturing
company having tendered him the stock, it would be en-
titled to recover the contract price of the stock. (3 Par-
sons, Contracts [5th ed.], 209.)

*Wasson v. Palmer,* 17 Neb., 330, was an action brought
by a vendor of real estate against the vendee for the lat-
ter's breach of a contract to purchase the real estate, and
this court held: "Where the vendee of real estate refuses
to perform the contract on his part and an action is
brought to recover damages for the breach, no tender of a
deed for the property is necessary before bringing the ac-
tion. The rule is different, however, where the action is
to recover the contract price."

*Thrasher v. Pike County R. Co.,* 25 Ill., 393, was an ac-
tion by the railroad company against Thrasher to recover
the contract price of certain shares of stock which he had
subscribed for of the stock of said company. Speaking of
the measure of damages the court said that an agreement to
subscribe for a certain amount of stock is like an agree-
ment to purchase any specific article of property, and if
there has not been a delivery or an offer to deliver the
stock, the measure of damages is not the value of the stock,
but only such as would result from the loss of the sale.

In *Thompson v. Alger,* 53 Mass., 428, A. made a con-
tract with T. for the purchase of railroad shares, and after-
wards paid T. a part of the price; T. subsequently caused
the shares to be transferred to A., but he refused to take
them, and T. brought an action against him, and the court
held that the measure of damages was the contract price.

These decisions are but applications of the well known
rule that where a vendee refuses to perform his contract
the vendor has either one of two remedies: he may keep
the property made the subject of the contract and sue
the vendee for his failure to perform, and in such case his
measure of damages will be the difference between the
contract price of the property and its actual value at the

date of the breach of the contract; or the vendor may
tender the property made the subject of the contract to the
vendee, and then in a suit upon the contract the vendor's
measure of damages will be the contract price of the prop-
erty.

2. The second contention is that the petition fails to state
a cause of action for the reason that it shows that the whole
amount of capital stock provided by the articles of incor-
poration of the manufacturing company has not been sub-
scribed.   To sustain this contention we are cited to *Livesey
v. Omaha Hotel Co.*, 5 Neb., 50, in which it was held:
"When the subscription contract or charter of a corpora-
tion specifically fixes the capital stock at a certain amount,
divided into shares of a certain amount each, the capital so
fixed must be fully subscribed before an action will lie
against a subscriber to recover assessments levied on the
shares of stock, unless there is a clear provision in the con-
tract to proceed with the accomplishment of the main de-
sign with a less subscription than the whole amount of
capital specified, or there is a waiver of the condition pre-
cedent," and *Hale v. Sanborn*, 16 Neb., 1, and *Hards v.
Platte Valley Improvement Co.*, 35 Neb., 263.   The gen-
eral rule announced in the case in 5 Neb. was followed and
adhered to in the cases in the 16th and 35th; but these
cases are not in point here.   In the case in 5 Neb. the cor-
poration was a hotel company, in 16 Neb. the corporation
was a flouring mill, and in 35 Neb. the corporation was
organized for the erection and operation of a hall for the
use of societies, organized meetings, and for such other
purposes as the trustees of the corporation might deem for
the benefit of the stockholders.   In other words, none of
the corporations were manufacturing corporations.   The
corporations mentioned in those cases were organized under
the general incorporation laws of the state, and there is no
provision in this general law by which a corporation is
authorized to commence the transaction of business until all

its capital stock is subscribed. In the case at bar the corporation is a manufacturing corporation and expressly authorized by the statute under which it was incorporated to commence business when ten per cent of its capital stock should be subscribed. Cook, in his work on Stock and Stockholders, after stating the general rule that it is an implied part of a contract of subscription to the capital stock of a corporation that the contract is to be binding and enforceable against the subscriber only after the full capital stock of the corporation has been subscribed, says: "The act of incorporation may of course vary this rule. Thus, it is well established that where the charter authorizes the organization of the company, and the commencement of corporate work after a certain amount of the capital stock has been subscribed, such a charter provision is equivalent to an express authority to the corporation to call in the subscriptions as soon as this organization is effected. Subscriptions to the full amount of the capital stock are held not to be necessary. The defense is not good." (1 Cook, Stock & Stockholders, sec. 177.) In this state the legislature does not by a special act charter a corporation, but all corporations are formed under general laws, and these laws and the articles of incorporation adopted in pursuance of and in conformity with such laws constitute the charter of a corporation of this state.

In *Jewett v. Valley R. Co.*, 34 O. St., 601, the contract sued upon was in the following language: "'We, the undersigned, hereby respectively subscribe to and agree to take of the capital stock of the Valley Railway Company the number of shares, of fifty dollars each, set opposite our respective signatures,'" etc. The capital stock of the railway company was fixed by its certificate of incorporation at three millions of dollars. Jewett subscribed for one hundred shares of its stock amounting to $5,000. A law in force in Ohio at the time provided that railroad corporations, so soon as ten per cent of their capital stock should be sub-

scribed, might give notice to the stockholders to meet for the purpose of choosing directors and construct and maintain a railroad. The railroad company sued Jewett on his subscription, and he defended on the ground that, as the entire amount of the capital stock authorized by the certificate of incorporation had not been subscribed, he was not liable. The court said: "Can assessments be made and enforced on subscriptions for shares of the capital stock of a railroad corporation before the whole amount of stock, mentioned in the certificate of incorporation, has been subscribed? In the absence of both legislation and express agreement on the subject, they cannot." The court then cites *Salem Mill-Dam Corporation v. Ropes*, 6 Pick. [Mass.], 23, and other cases supporting the general doctrine, and continues: "In most states, however, provision has been made by statute; and it is well settled that 'contracts must be expounded according to the laws in force at the time they are made, and the parties are as much bound by a provision contained in a law as if that provision had been inserted in and formed part of the contract.' * * * A careful consideration of the enactments set forth in the statement of this case, and other cognate statutory provisions, leaves with us no doubt that when ten per cent of the capital stock had been subscribed the company may organize by the election of directors, who may 'transact all business of the corporation,' and, looking to the duties imposed on the directors, it is clear that the residue of the stock, beyond the ten per cent, * * * must 'be paid in such installments and at such times and places, and to such persons as may be required by the directors of such company,' though the whole amount of the capital stock may not have been subscribed. * * * The terms of the subscription on which this suit was brought are in harmony with the statutory provisions as we have construed them; and hence the fact that the whole of the capital stock had not been taken afforded no defense to this action." (See, also, *Hunt v. Kansas & Missouri Bridge Co.*, 11 Kan., 412)

We conclude, therefore, that the fact that all the stock authorized by the articles of incorporation of a manufacturing company has not been subscribed is not a defense to a subscriber for such stock when sued on his contract of subscription, if ten per cent of the stock of such manufacturing corporation has been subscribed. The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.