## ALLEN et al. v. RHODES.

(Circuit Court of Appeals, Eighth Circuit. February 5, 1916.)

No. 4193.

1. CORPORATIONS ⟨⟩104—STOCK SUBSCRIPTIONS—LIABILITY—ESTOPPEL.

Subscribers to the stock of a corporation, who were directors and attended meetings as such, or who attended and participated in stockholders' meetings, or who paid the first assessment on stock subscriptions and thereby recognized the existence of the corporation, were estopped to defend a suit by a receiver to recover the unpaid subscriptions on the ground that the full amount of the capital stock had not been subscribed in good faith.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 454; Dec. Dig. ⟨⟩104.]

2. CORPORATIONS ⟨⟩562—STOCK SUBSCRIPTIONS—LIABILITY TO CREDITORS.

Though only a small part of the capital stock of a corporation was subscribed, where the subscribers organized the corporation by electing directors and other officers, entered into contracts, held directors' and stockholders' meetings for nearly five years, and some of them paid an assessment on the subscriptions, there was a de facto if not a de jure corporation, and a receiver could collect the unpaid subscriptions for the purpose of paying bona fide creditors, even though the subscribers could not be held liable to the corporation for the payment of their subscriptions until the stock was fully subscribed in good faith.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2265, 2266, 2268–2271; Dec. Dig. ⟨⟩562.]

3. CORPORATIONS ⟨⟩34(6)—STOCK SUBSCRIPTIONS—LIABILITY TO CREDITORS.

If debts are incurred by a de facto corporation, even if it has never been legally organized, subscribers, standing by and making no objections, will be estopped from pleading the nonexistence of the corporation, when sued for the benefit of creditors.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 92, 96; Dec. Dig. ⟨⟩34(6).]

Smith, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the District of Nebraska; Page Morris, Judge.

Suit by Walter H. Rhodes, successory receiver of the Omaha, Decatur & Northern Railway Company, against A. W. Allen and others. From a decree in favor of complainant, certain defendants appeal. Affirmed.

The appellee, as the successory receiver of the Omaha, Decatur & Northern Railway Company, a corporation organized under the laws of the state of Nebraska, brought this suit against the appellants to recover unpaid assessments on their subscriptions to the capital stock of the railway company. The facts are practically undisputed, the case having been submitted on an agreed statement of facts, and are as follows:

On January 20, 1903, ten persons signed and acknowledged articles of incorporation, under the laws of the state of Nebraska, of the Omaha, Decatur & Northern Railway Company, and filed the same with the secretary of state, as required by the laws of that state, on January 21, 1903. The purpose of the corporation was to construct an electric railroad through certain counties in the state of Nebraska.

On February 24, 1903, the stock books were opened and subscriptions made for 1,106 shares of the stock. Among these subscriptions was one made by F.

W. Bement for 980 shares, of the par value of $98,000, each share being of the face value of $100. The other shares were subscribed by the defendants, who were appellants in the court below. The subscription by F. W. Bement, it is claimed, was not in good faith, as he had no means and did not intend to pay for the same, but was to receive them for his services as the promoter of the enterprise. These services were to be that he was to finance the company, sell the stock, place the bonds, and secure the money to build the railroad. For this he was to receive the 980 shares of stock as fully paid up.

A meeting of the stockholders was held on April 16, 1903, when directors were elected. On April 25th, the board of directors thus elected, held a meeting, at which by-laws for the company were adopted and officers elected. At that meeting an assessment of 10 per cent. payable at once was made, and paid by some of the defendants, but not paid by others, nor Bement. Directors' and stockholders' meetings were held after the organization a number of times, the last on November 26, 1907, after which date it does not appear any further meetings were held.

The full amount of the stock was never subscribed during the time the corporation was in existence. At a meeting of the directors held on August 24, 1903, the board made an assessment of 15 per cent. On January 5, 1905, the board made another call of 80 per cent., declaring that 20 per cent. had heretofore been called, although the record showed that 25 per cent. had been called, so that an assessment of 75 per cent. would make the stock entirely paid up, when paid; but neither of these two assessments were paid by any of the stockholders.

Contracts were entered into by the board of directors with different parties for services to be performed, among them with Clifford C. Peirce and Lester F. Wakefield, the latter being employed as chief engineer of the company. Afterwards Peirce and Wakefield instituted suit against the railway company in the Circuit Court of the United States for the District of Nebraska, for money due them for their services, and on March 31, 1908, they secured judgment against the railway company for $3,000, interest, and costs; an execution was issued thereon, and returned unsatisfied on the 10th day of July, 1908, whereupon they filed a creditors' bill in the Circuit Court of the United States for the District of Nebraska, for themselves, and all other creditors of the railway company, praying for the appointment of a receiver, to collect the assets and apply them to the payment of their judgment and the claims of such other creditors, as make themselves parties to the action.

At a hearing Lester R. Slonecker was, on the 4th day of July, 1908, appointed receiver of the railway company, and he resigning on December 21, 1908, the plaintiff, Rhodes, was appointed as successor receiver, and qualified as such. Later an order was entered by the court in that case, requiring the creditors to present and file their claims with the receiver, and that they be referred to a special master, who was to pass upon them. On the 29th day of September, 1909, the special master filed a report, in which he reported the allowance of claims of eight creditors, amounting to a total of $5,600.72, with interest thereon; that the only assets which came to the hands of the receiver were the unpaid assessments on the subscriptions to the capital stock. This report was by the court approved and thereupon, by authority of the court, this bill was filed against the defendants to collect the amount due from them respectively on their subscriptions.

Answers were filed by the defendants, but the only serious defense made was that, as the full amount of the capital stock of $1,000,000 was never subscribed, except a small amount, viz., $12,600, the subscription of Bement being fraudulent, with no intention of being paid, that the corporation never had a legal existence and therefore they are not liable.

Upon final hearing a decree was rendered by the court against the defendants, 69 in number, for the amounts respectively due from each of them on their subscriptions. The decree further provided: "Complainant have execution against each of the above-named defendants individually, against whom judgment is rendered, for his proportionate share of the corporate debts, complainant's claim, interest, costs, receiver's and counsel's fees, in the total sum of $9,490, to November 15, 1913, and in the event that complainant is unable

to collect from each of the aforesaid individual defendants upon the said execution, his proportionate share of the said complainants' claim, corporate indebtedness, he shall so report the same to this court, and the court will thereupon order additional executions to be issued against each of the said defendants, from time to time, and his proportionate share of the said corporate indebtedness, costs, interest and fees, so remaining unpaid until the full amount of complainants' claim and the corporate debt, with interest and costs, are fully paid: Provided, that no execution for an amount in excess of the amount hereinbefore adjudged to be due from each of the defendants shall be ordered."

From this decree this appeal was prosecuted by 43 of the 69 defendants against whom judgment had been rendered by the decree.

H. C. Brome and Clinton Brome, both of Omaha, Neb., for appellants.

Edward M. Martin, of Omaha, Neb., for appellee.

Before SANBORN and SMITH, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). Assuming that the agreement with Bement made his subscription fraudulent and void, the question to be determined upon this appeal is whether, owing to the fact that only $12,600 of the capital stock of the railway company, which was to be $1,000,000, was subscribed in good faith, the corporation had such existence as to make those who did subscribe liable to creditors of the company for the unpaid portions of their subscriptions.

The authorities are conflicting whether subscriptions made to a corporation, when the full amount of the capital stock has not been subscribed, or, if subscribed, some of the subscriptions are not in good faith, are collectible by the corporation, when the statutes of the state, under which the corporation was formed, are silent on the subject and the articles of incorporation do not contain such a provision. Neither the statutes of Nebraska nor the articles of incorporation make it a condition precedent that they are to become effective only when the full amount of the capital stock is subscribed in good faith. But assuming, without deciding, that, until the entire capital stock is subscribed in good faith, the subscribers cannot be held liable to the corporation for the payment of assessment calls on their subscriptions, the question is whether that rule applies to an action by a receiver appointed on behalf of judgment creditors of the corporation.

[1] The appellants James R. Anderson, H. V. Byram, C. E. Barlow, Geo. M. Byram, G. H. Busse, P. B. Gordon, Richard Lewis, and James P. Latta were directors and attended meetings as such. The following appellants attended and participated in stockholders' meetings of the corporation: I. N. Holman, J. R. J. Mitten, H. G. Byram, C. E. Barlow, James McAllister, Charles Phipps, George Byram, Eugene L. Byram, G. H. Busse, J. E. Butts, P. B. Gordon, William B. Gregg, Richard Lewis, and Thos. Ashley. The following appellants paid the first assessment, and thereby recognized the existence of the corporation: James R. Anderson, J. E. Henry, J. R. J. Mitten, W. B. Watson, J. M. Conneally, Chloe R. Canfield, Eugene L. Byram, L. H. Deman, A. K. Sears, and Nels P. Larson. These appellants are clearly

estopped, and as to them the decree must be affirmed, regardless of what conclusion we may reach as to the liability of the other appellants. 7 Ruling Case Law, p. 235; Planters', etc., Packet Co. v. Webb, 144 Ala. 666, 39 South. 562; Lincoln Park Chapter v. Swatek, 204 Ill. 228, 68 N. E. 429.

[2] The record shows that, although but a small part of the capital stock of the corporation was subscribed, the subscribers organized the corporation by electing directors and other officers, entered into contracts, held directors' and stockholders' meetings for nearly five years, the first meeting being held on February 24, 1903, and the last on December 26, 1907, and that some of the subscribing defendants paid the first call of 10 per cent. These acts certainly make it a de facto corporation, if not de jure, and being a de facto corporation the subscribers to the stock are liable to creditors of the corporation for unpaid subscriptions. Tulare Irrigation District v. Shephard, 185 U. S. 1, 13, 22 Sup. Ct. 531, 536 (46 L. Ed. 773). It was there held:

"From the authorities, some of which are above cited, it appears that the requisites to constitute a corporation de facto are three: (1) A charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise. * * * Being a de facto corporation, the general rule is that none but the state can call its existence in question."

And the court held that, being a corporation de facto, a holder of its bonds could recover on them. See also Harrill v. Davis, 168 Fed. 187, 94 C. C. A. 47, 22 L. R. A. (N. S.) 1153, decided by this court.

In 5 Thompson on Corporations (2d Ed.) § 5183, it is said:

"The rule is believed to be without exception that a stockholder sued by or on behalf of the creditors after the corporation has become insolvent is estopped to question the legal existence of the corporation of which he was a stockholder."

And in section 5184 the same author states:

"A stockholder cannot urge as a defense that the corporation was irregularly or illegally organized, since his liability is an incident to the liability of the corporation, and the corporation would, in most cases, be estopped to set up such a plea. It is enough that the corporation is a corporation de facto"— citing numerous authorities, which sustain the text.

And this seems to be the rule in the state of Nebraska, as established by the decisions of the Supreme Court of that state. In Lusk v. Riggs, 70 Neb. 713, 97 N. W. 1033, it was held that where the articles of incorporation have not been filed with the secretary of state, as required by the statutes of the state, the corporation, although having acted as such, would not be held liable, nor could it enforce its contracts; but upon a rehearing this decision was set aside, and the rule, recognized in other states, followed that, being a de facto corporation, persons who dealt with it as such cannot question its legal existence, nor can the corporation plead that it was never legally organized. 70 Neb. 718, 102 N. W. 88. The same rule is laid down in 10 Cyc. 494, 495.

A leading case on that subject is Minor v. Mechanics' Bank, 1 Pet. 46, 65, 7 L. Ed. 47. In that case only $320,000 out of $500,000 of the capital authorized by the charter was subscribed in good faith, but the

court did not regard this deficiency in the subscriptions as at all affecting the status of the corporation or the validity of its operations. In Aspinwall v. Butler, 133 U. S. 595, 10 Sup. Ct. 417, 33 L. Ed. 779, it was said:

"There was no express condition that the individual subscriptions should be void if the whole $500,000 was not subscribed; and, in our judgment, there was no implied condition in law to that effect. Each subscriber, by paying the amount of his subscription, thereby indicated that it was not made on any such condition. It is not like the case of creditors signing a composition deed to take a certain proportion of their claims in discharge of their debtor. The fixed amount of capital stock in business corporations often remains unfilled, both as to the number of shares subscribed and as to payment of installments; and the unsubscribed stock is issued from time to time as the exigencies of the company may require. The fact that some of the stock remains unsubscribed is not sufficient ground for a particular stockholder to withdraw his capital."

To the same effect is Scott v. De Weese, 181 U. S. 202, 21 Sup. Ct. 585, 45 L. Ed. 822. In the Minor Case it was also held that a fraud between some of the original subscribers and commissioners, whereby their subscriptions were not made bona fide, but with the intention of not paying for the stock, could not be set up to the injury of creditors, who did not participate in nor have notice of the fraud. Cole v. Satsop R. R. Co., 9 Wash. 487, 37 Pac. 700, 43 Am. St. Rep. 858; Farnsworth v. Robbins, 36 Minn. 369, 31 N. W. 349; Morrison v. Dorsey, 48 Md. 468; Musgrave v. Morrison, 54 Md. 161.

[3] If debts are incurred by a de facto corporation, even if it has never been legally organized, the subscriber, standing by and making no objections, will be estopped from pleading the nonexistence of the corporation, when sued for the benefit of creditors. Homan v. Steele, 18 Neb. 652, 26 N. W. 472; Hudson v. Greenhill Seminary, 113 Ill. 618; International Fair Association v. Walker, 83 Mich. 386, 47 N. W. 338. In the last cited case there had only been a preliminary agreement to form the corporation, and it was held:

"The object sought to be accomplished by this preliminary agreement was a lawful one; the promises contained in this preliminary agreement were mutual, and the acts done and the moneys expended were in reliance upon these original subscriptions; and there could be no difficulty in enforcing this agreement at the common law."

In Gress v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900, it was well said:

"When a person becomes a stockholder of a corporation, be becomes a part of it. Its agents are in a sense his agents. They go out and deal with the public. If through their dealings debts are incurred, assuming both the stockholder and the creditor to be innocent and that one must suffer, the former, who put it in the power of the agents to do the wrong, should suffer rather than third parties, who dealt with such agents."

There is no pretense that any fraud has been practiced on any of these appellants, who probably were influenced to subscribe to the stock of the corporation by the belief that it would greatly benefit them by affording them cheap and rapid transportation. During the entire time the corporation was alive, none of them ever objected to any acts of the directors, nor asked to be relieved of their subscriptions. The debts

which have been allowed against the corporation have been found by a court of competent jurisdiction to be bona fide and justly due to the parties, for services rendered in good faith, under contracts with the corporation, and we see no reason why the subscribers to the stock should now be permitted to escape the consequences of their own acts, whether due to carelessness or ignorance.

The decree is right, and is affirmed.

SMITH, Circuit Judge (dissenting.) I cannot concur in the foregoing opinion. It is true it is alleged in the bill that on February 24, 1913, stockbooks were opened; but this was an issue, and there is no evidence to sustain the allegation. These are but trifles. The total subscriptions to the stock were only about 1¼ per cent. of the capital provided for in the articles of incorporation. One of the conditions precedent to the subscriber's liability which is implied from his contract of subscription is that relating to the amount of capital stock which must be taken before the liability attaches. It is a general and well-settled rule, subject to a few qualifications only, that where the capital stock of a corporation is fixed it is implied in every contract of subscription as a condition precedent to liability thereunder that all the capital stock must be subscribed. This has been expressly held in Nebraska. Livesey v. Hotel Co., 5 Neb. 50; Hale v. Sanborn, 16 Neb. 1, 20 N. W. 97; Hards v. Platte Valley Improvement Co., 35 Neb. 263, 53 N. W. 73. And this is practically the universal rule. 7 Ruling Case Law, p. 231; Thompson on Corporations, par. 529; 10 Cyc. 491. And according to the weight of authority subscriptions of persons who were insolvent at the time when they became subscribers should not be counted. 7 Ruling Case Law, p. 234.

The general rule that the liability of a subscriber attaches only on performance of the implied condition precedent that all the capital stock be subscribed is subject to the exception that he is liable for preliminary expenses, notwithstanding the failure to perform that condition; but he cannot be held liable for calls made or assessments levied to advance the general objects and purposes of the charter until all the stock be taken. Expenses of a preliminary nature necessarily incurred to obtain knowledge on the subject of the undertaking, as by making surveys or for the purpose of forwarding the subscription and extending the public patronage, etc., rest on a different footing. Those expenses are necessarily contemplated by the subscriber, and an assessment levied to collect funds for these purposes is binding, though part of the capital stock remains unsubscribed; Covington, Coal Creek & Jacksonville Plank Road Co. v. Moore, 3 Ind. 510; Salem Mill Dam Corp. v. Ropes, 23 Mass. (6 Pick.) 23; Same v. Same, 26 Mass. (9 Pick.) 187, 19 Am. Dec. 363; Central Turnpike Corporation v. Valentine, 27 Mass. (10 Pick.) 142; Littleton Mfg. Co. v. Parker, 14 N. H. 543; Anvil Min. Co. v. Sherman, 74 Wis. 226, 42 N. W. 226, 4 L. R. A. 232; Milwaukee Brick & Cement Co. v. Schoknecht, 108 Wis. 457, 84 N. W. 838; Schloss et al. v. Montgomery Trade Co.,

87 Ala. 411, 6 South. 360, 13 Am. St. Rep. 51, note to 93 Am. St. Rep. 379. And where a subscriber attends meetings and votes his stock for purposes which involve an outlay such that an assessment is necessarily contemplated as these acts are done, with a knowledge that the capital stock has not been subscribed, this amounts to a waiver of the condition that it must be, and the subscriber is liable.

Again, acting as an officer or director of a corporation, attending meetings as such, or participating in proceedings to carry on the business for which the corporation is created, where done before the capital stock is all taken and in knowledge of this fact, impliedly waives any right to insist that the subscription of all such stock is a condition precedent of one's liability. 7 Ruling Case Law, p. 235; note to Gettysburg National Bank v. Brown, 93 Am. St. Rep. 382, and cases there cited. Neither that the liabilities in question were for preliminary expenses nor that there was such a waiver as just referred to is alleged in the bill, but it is alleged in general that:

"On and between the said 20th day of January, 1903, and the 26th day of November, 1907, the incorporators, and later the stockholders, directors, and officers, of said Omaha, Decatur & Northern Railway Company held meetings, entered into contracts, caused surveys to be made, employed agents and servants, and in general transacted the business for which said corporation was formed, and each of the defendants is now estopped from denying the incorporation and legal existence of said Omaha, Decatur & Northern Railway Company."

It is very doubtful whether this constitutes a substantial allegation of estoppel; but, it having not been assailed in any form, I shall assume it does, and this dissent is not from the holding that a part of the defendants are estopped. There is no evidence that any notice was given of the first stockholders' meeting at all. At that meeting, exclusive of Bement, there were only 25 stockholders present, representing 38 shares, or about one-third of 1 per cent. Twenty-seven of the subscribers had no notice, for aught that appears, of any meeting to organize the corporation, never held any office or took part in any way in anything that was done by the company. It seems clear to me that they were not estopped.

It fairly appears that possibly some of the expenses allowed were for preliminary expenses, but it does not appear that all of the expenses were of that character. That is, it is conceded by the appellant in his brief that Wakefield, of Wakefield & Peirce, who recovered judgment for $3,000, was chief engineer of the railway company, and it may well be guessed that the claim in whole or in part was for surveying, which would be a proper preliminary expense for which all the defendants would be liable. It more clearly appears that the claim of H. H. Bowes was for attorney's fees, which would not be a proper preliminary expense. There is nothing to indicate whether the balance of the claims allowed were for preliminary expenses or otherwise.

It is held that the 27 stockholders who never did anything but sign the subscriptions for stock, with the implied condition precedent that they were not to be liable until $1,000,000 had been subscribed, became liable to substantially the full amount of their subscriptions with-

out any allegation that the claims filed were for preliminary expenses, and with no substantial proof to that effect, is a violation of the fundamental rules applicable in such matters, and in justice the case ought to be reversed as to them at least.

Considerable is said in the forgoing opinion upon the failure of these 27 during the intervening years to bring an action to rescind. They had no right to maintain an action to rescind as there was no fraud. That broadly distinguishes this case from the case of Gress v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900. Nor is it of any avail to say that these men stood by and saw the debts contracted. There is not a syllable of evidence that they ever knew that the company was organized, or ever "stood by" while these debts were contracted.

The opinion practically overrules all the cases cited on preliminary expenses, because, if these men who never did anything, and who are not shown to have known anything about what was being done, are liable, not only for preliminary expenses, but for all others, then the whole doctrine of preliminary expenses is a senseless and useless one.

Fully believing that the judgment should be reversed, at least as to the 27 who are not shown to have had anything to do with the corporation, I cannot but dissent from the foregoing opinion.