## STEWART *et al.* *vs.* RUTHERFORD.

1. Where one has been induced by fraudulent means to join in obtaining a charter, entering into a venture and putting money into it, equity will grant him relief, although, as a part of the transaction, he became a stockholder, and was made president for a time.

2. The legal title to the land, in which complainant's money was invested, and which it was sought to subject, being in the corporation, it was a necessary party, and the bill was not made multifarious by joining it as such.

3. The bill alleged the insolvency of all parties, including the corporation; but aside from this, one who was cheated into the venture by fraud could have the aid of a court of equity to sever his connection with it and recover what he had put into it, whether the corporation was insolvent or not.

4. Where the complainant did not seek any redress in the character of a stockholder or president, but sought to sever his connection

entirely with it and to recover what he had been induced to put into it by fraud, it was not necessary that he should ask relief of the stockholders who perpetrated the fraud before applying to equity to annul the contract.

5. The general manager, who was individually a party, had a residence in this state sufficient to be served here, though absent at the time.

(a.) The complainant having no redress except by proceeding against land located in this state, the jurisdiction *in rem* by bill in equity would be vested in the courts here.

February 21, 1885.

Corporations. Fraud. Equity. Stock and Stockholders. Parties. Jurisdiction. Venue. Before Judge BROWN. Lumpkin Superior Court. October Term, 1884.

Reported in the decision.

BARROW & THOMAS, for plaintiffs in error.

W. P. PRICE; H. H. PERRY, for defendant.

JACKSON, Chief Justice.

Rutherford filed a bill in equity against a mining company, chartered in West Virginia, to do a gold-digging business in lands to be purchased in Georgia, and against his co-stockholders therein. The bill alleged, in substance, that the other stockholders—some by false and fraudulent representations touching the mine to be purchased and another mine, stock in which was given him as collateral security, and all of them with knowledge of the fraud, the other two having a bond for titles to the mine to be purchased, and being cognizant of the condition of it and the venture to be made, and the means to be used to accomplish it—entrapped the complainant into advancing and paying ten thousand dollars to them, to be used in the purchase of the mine and furnishing the machinery to work it as a corporation so created or to be created in West Virginia, and by a charter from that state. It alleges that gold nuggets and

gold dust, purchased from one McAffee, and taken from his mines, were falsely represented to complainant as the product of the mine to be purchased with his money, and to be worked by the company, and that the defendants painted the mine to him in gorgeous and golden colors, located in two lots of land belonging to the two stockholders above referred as holding the bond for titles thereto, and, by these and to similar artifices, allurements and falsehoods, beguiled him into the venture. . It alleges that the charter was procured from West Virginia; that four thousand shares at twenty-five dollars a share was to be the capital stock; that complainant was to have shares to the amount of $6,000.00 worth, and the others certain shares; but not a man put into the venture any money except himself, who advanced said ten thousand dollars; that the machinery was wholly worthless which was bought with his money, and that the entire scheme soon exhibited itself to complainant as a swindle to entrap him and catch his money. It alleges that he has heard that some debts had been created by the corporation, which is named S. Lu Mining Company, of which company he was made the president, but during its brief life has been denied access to the books, vouchers or other means of ascertaining how his money— all it had—has been used by the general manager, one of the most active conspirators to defraud complainant, and an account of which should have been kept by the secretary, another of them, and that he has since been deprived of the presidency. It alleges that no stockholder is in the company, except those thus cheating him or cognizant of the cheat, and that all are insolvent. The prayer is that if there be any debts due others by the corporation, they be paid out of the two land-lots, and the remainder of the proceeds be decreed to belong to him, or, if there be no debts to others, that the two land-lots be decreed to be his property; or that, upon his surrender of his $6,000.00 nominal worth of stock, that the ten thousand dollars advanced by him, and defrauded out of him by these confederates,

be paid to him, with the interest thereon from the date of the advance, or such other relief as equity would give him.

Such is the cream of this bill, not in its language or order of recitals, but the essence of it drawn from the bill and the amendment.

It was demurred to because there is no equity in it, because it is multifarious, because the company is solvent from its allegations, and because the complainant, being a stockholder and the president, had sought no redress from the company.

1. The bill is full of equity. It is a bill filed by one man against some five or six other men, who have, by the grossest fraud on the part of most of them, known to all of them, induced the other to put ten thousand dollars into a corporation to be created in West Virginia and to go to work in Georgia upon mineral lands in the latter state,—who made him president to get his money, and turned him out because he naturally desired to see what had become of it, and who, as the complainant in equity, asks that he may get his money back out of the land in which he was fraudulently induced to put that money, by virtue of a corporation into membership in which complainant was inveigled. The fraud is not a fraud of certain existing stockholders committed upon another, also already a member, nor is it a fraud by a corporation in existence upon one of its stockholders; but it antedates the existence of the corporation. It attacks the very contract which made the corporation, put into operation, and furnished the means to buy the thing to be operated upon, and the tools by which that thing, the mineral lots of land, was to be worked by the corporation to be afterwards created. One man, or a set of several men, can no more swindle and cheat another out of his money in order to make a corporation and set it to work, than he or they could cheat and swindle him into any other contract or about any other thing. There is no such sanctity about a corporation that a natural person should

be induced fraudulently by certain other natural persons to apply for this artificial person with them to be created by the state, and yet have no relief against those who thus cheated him, because the result of the cheating was success in creating the entity called an artificial person or a corporation. Nor does it matter one iota that the fraud made him a stockholder therein, or even the president thereof, to sweeten the pill with ambition gratified by putting him at the head of the corporation to be made. That some of the facts showing fraud in the antecedent contract transpired after the contract bore the fruit which its procurers by fraud intended, to-wit, ripened into a corporation, can make no difference. If they throw light on the contract, and the conduct of those making it, and the motives leading to that conduct, it pours light upon the original transaction just as full as if it were contemporaneous or antecedent facts. The evening sun is as luminous with its backward rays upon the earth's productions as the morning beams it casts forward upon tree or flower. Often the character of the tree is unknown until it bears fruit. Indeed, it is " by their fruits ye shall know them." Therefore it is right that the equity of this be considered by all its facts bearing upon the entire transaction, as well as the representations made before the contract; the events subsequent thereto are elements that exhibit the case. Indeed, the best mode of showing the falsehood of the representation is to show wherein afterwards its promises failed.

Fraud will set aside a contract to make a corporation and run it, as well as any other contract; and equity will draw its sting from this sort of contract just as quickly and thoroughly as it will heal the wounds it makes in other dealings of men with men. That it will relieve in all contracts, see the Code, sections 2751, 3172, 3173, 3174, 3175, 3176, 3178. Even a solemn judgment of a court, as well as all conveyances obtained by fraud, fall before the blows of a court of equity. Fraud in procuring one to put his

money into a corporation, venture or speculation is no exception to the universal rule. Therefore, inasmuch as the demurrer admits the truth of the allegations made in this bill and amendment, and as those allegations make a clear case of fraud, there is equity, and plenty of it, in the bill. Of course if innocent parties have been affected by the corporation during its operation, the court will protect them, and the complainant alleges that creditors thereof should be paid, if there be such. As he united with the defendants in creating this wildcat sort of adventure, all the way from West Virginia to Georgia, though deluded and decoyed into it, the equity of people who had no part or lot in making it and bringing it to Georgia is superior to his own.

2. As the legal title to the mineral lots is in the corporation, and the only way to get back complainant's money is through those lots into which his money went by the fraud of the other defendants, the corporation is a necessary party, and the bill is not multifarious.

3. The bill alleges the insolvency of all the defendants, as well the corporation as the others, and so the third ground of demurrer is not good. But outside of that—inasmuch as complainant was cheated into it, he can break the bonds that tied him to it, and leave with what he put in by the fraud of the others, whether the corporation be insolvent or not.

4. The complainant seeks no redress from the company as a corporation in the character of stockholder and president or either. Not as president, because he is no longer that officer; nor as stockholder, because he was defrauded into becoming a stockholder, and because that fraud annuls the contract which made him a stockholder. His prayer is to get out; not to be relieved, or reinstated in the office of president, or otherwise redressed inside, but to wash his hands of the whole concern, because he was badly cheated, he says, to get him in. So that the question is, if a man has been fraudulently made a stockholder,

will equity force him to ask leave of an entity composed altogether of the men who defrauded him, or connived at, or were cognizant of it, or will it annul this, as it would any other contract founded in fraud? Of course it will annul it. So there is nothing in the 4th ground of demurrer. See *Hendrix vs. Academy of Music*, 73 *Ga.*, 437; also 57 *Ga.*, 240.

5. In respect to the jurisdiction, we think the general manager, who is individually a party, had a residence in Georgia sufficient to be served here, though absent at the time. Besides, the land being in this state, and the party complainant having no redress but in it, would make the jurisdiction good *in rem.* under the ruling in *Harris, trustee, vs. Palmore, ante*, 273.

Judgment affirmed.