## GEORGIA PORTLAND CEMENT AND SLATE COMPANY et al. v. JACKSON et al.

1. Where an equitable petition was filed against a corporation alleged never to have been legally organized, and certain individual stockholders and officers thereof, who were also the promoters and organizers of the corporation, and as such secured cash subscriptions of stock in a large sum from the plaintiffs by falsely and fraudulently representing the corporation to be organized and ready for business, with officers, equipment, money on hand to pay for same, railroad rights of way to the plant, when in fact, it was alleged, there were no assets at all except such as were received from the plaintiffs for the stock purchased by them, and which was invested by the individual defendants in certain lands, the deeds to which expressed much larger considerations than were actually paid by the defendants to the owners, and the lands con-

tained deposits out of which a superior quality of Portland cement could be made; and where on discovery of the alleged fraud the plaintiffs tendered back to the officers of the corporation and the defendants their stock to be canceled and asked a refund of the money paid for the stock, which the officers of the corporation promised as soon as they could sell the lands (but which they neglected to do), and relying on these promises the plaintiffs waited eighteen months to bring suit to trace the money paid by them for the stock into the land, and to obtain judgment for the same and have a lien established on the land, the plaintiffs were not in laches, nor barred from bringing their suit on account of the lapse of time between paying for the stock and the bringing of the suit.

2. In such a case as stated in the preceding headnote, the court did not err in overruling a demurrer to the petition on the ground that it set forth no cause of action.

3. There is no merit in any of the grounds of demurrer other than that specially dealt with in the third division of the opinion, and the judgment is affirmed with direction that it be modified as pointed out in that part of the opinion.

FEBRUARY 10, 1915.

Equitable petition. Before Judge Pendleton. Fulton superior court. December 8, 1913.

J. G. Jackson and others brought their equitable petition against the Georgia Portland Cement and Slate Company, and W. W. Wadsworth, H. H. Cabaniss, and W. W. Jones, and alleged substantially as follows: The corporation was chartered in the year 1908, on the petition of W. W. Wadsworth, H. H. Cabaniss, W. W. Jones, and W. P. Davis, and their associates. Since the corporation was chartered W. P. Davis has died, and there is no administration upon his estate. The authorized capital stock of the corporation is $1,000,000, divided into 50,000 shares of preferred stock of the par value of $10 per share, and 50,000 shares of common stock of the par value of $10 per share. Shortly after the corporation was chartered, and before petitioners subscribed for and obtained any stock therein, a number of subscribers to stock undertook to organize the corporation, and named the following officers: W. W. Wadsworth, president; M. A. Pharr, first vice-president; W. M. Harris, second vice-president; and H. H. Cabaniss, secretary-treasurer; and also named a board of directors. At the time of the organization, none of the subscribers to stock who were present at the meeting and who participated in the election of officers had paid any part of their subscriptions, as far as petitioners are informed and believe. Shortly after the election of officers

and directors, they employed W. W. Wadsworth and J. D. Davis as their agents to sell stock in the corporation to the public. These agents approached petitioners for the purpose of selling stock to them, and represented that the Georgia Portland Cement and Slate Company had been organized under the laws of the State of Georgia with a capital stock of $1,000,000—$500,000 in common stock and $500,000 in preferred stock. They further represented to petitioners that the above-named officers, directors, and others were bona fide subscribers for stock, and had paid for their stock, and called petitioners' attention to the personnel of the officers of the corporation. They further represented to petitioners that the corporation had purchased 370 acres of land in Polk county, on which there were inexhaustible deposits of limerock, shale, and slate; that the property had been tested by the State chemist and pronounced the finest quality of shale and limestone in the world; that the corporation had paid for the property the sum of $115,000 in cash; that W. W. Wadsworth, acting for and in behalf of the corporation, had purchased $300,000 worth of machinery that had been shipped to the corporation at Rockmart, and that the purchaser had saved the company $200,000 in the purchase of machinery. They further represented that they had secured railroad rights of way to the property, and that the machinery would be installed and the plant erected at once, as the corporation had the money on hand with which to pay for the machinery. All of these representations were false and fraudulent. Relying upon the statements of W. W. Wadsworth and J. D. Davis as being true, petitioners subscribed for stock in the corporation in varying amounts. Petitioners were assured by these agents of the corporation that there would be no delay in the installation of the machinery represented to have been purchased, and that operations would begin without unnecessary delay, whereby a profit would be earned and dividends paid. In fact the preferred stock contains a provision guaranteeing a 7 % dividend, payable annually, redeemable in cash after July 1, 1914. Petitioners did not know of their own knowledge the conditions, but accepted as true the statements and representations of the officers and agents of the corporation, and subscribed to the preferred and common stock and paid therefor in good faith. If petitioners had known the facts as they existed at the time they subscribed and paid for their stock, they would not

have purchased the same. At the time petitioners subscribed for stock in the corporation, it was represented to them by the officers and agents of the corporation that the officers and agents had purchased and obtained deeds from the following parties: W. W. Wadsworth, H. H. Cabaniss, T. M. Green, J. W. Williams, W. O. Jones, M. A. Pharr, W. M. Harris, W. P. Davis, and W. M. Jones, to 130 acres of land, more or less, of an alleged valuation of $250,-000, notwithstanding the fact that the property had been recently conveyed to the grantors for a consideration of $3,800; deed from W. W. Wadsworth and H. H. Cabaniss to 140 acres for an alleged valuation of $250,000, notwithstanding the property had recently been conveyed to the grantors for an actual consideration of $4,500. It is alleged that the grantors in each of the above deeds were the promoters of the corporation, and were acting for it at the time they purchased the property and conveyed it to the corporation, and that the considerations named in the deeds from them to the corporation are fictitious and fraudulent, the real purchase-price of the property being $8,300; and these fictitious values were given with fraudulent intent and for the purpose of fraudulently inducing petitioners and others to subscribe for stock in the corporation. At the time petitioners subscribed for stock in the corporation, it was represented to them by its officers and agents that the lands above referred to had been fully paid for, and that $115,000 had been paid therefor. Petitioners charge that they have been informed since the time they subscribed for the stock that the land had not been paid for at all, but that the money they paid for the stock was used to pay for the land, and that while the title to the lands stands in the name of the corporation, in equity it is the property of petitioners, having been purchased and paid for with their money. No machinery was ever ordered, or shipped, or installed upon the property. No right of way was ever secured and no track laid, or any improvements made upon the property. The property is idle and brings no income whatever. Notwithstanding the fact that the corporation was pretended to have been organized in the year 1908, the officers and directors have failed and omitted to pay their subscriptions to stock, or any part thereof, and have failed and omitted to collect any substantial sums from other subscribers to stock in the corporation, petitioners having paid to the treasurer practically all the money which has been raised on subscriptions

to stock. Shortly after the election of officers and directors and the subscription to and payment for stock by petitioners, the officers of the corporation practically abandoned their effort to sell stock and to equip the property and carry out the alleged purposes of the corporation. The corporation has never been legally organized for the transaction of the business for which it was incorporated, for the reason that the required 10 % of the capital stock has not been paid in. The corporation has forfeited its charter, on account of non-user of its franchise. The charter of the corporation has been forfeited by wilful violation of the essential conditions on which it was granted, and because the purposes and objects of the corporation have been abandoned. If the corporation is the owner of any other property of consequence than the real estate referred to, it is not known to petitioners. The property of the corporation is idle and there is no income therefrom, and there is no effort or purpose to carry out the purposes of the corporation, and has not been for a period of nearly four years. Petitioners desire to sever their connection with the corporation; and in order to do so, they respectfully show that it is proper and necessary that some suitable person be appointed receiver to take charge of the property and assets of the corporation, and that the same be administered under the direction and decree of the court. About eighteen months ago petitioners discovered the falsity of the representations made to them at the time they paid for their stock in the corporation, and they made complaint to the officers of the corporation, to wit, W. W. Wadsworth and H. H. Cabaniss, and tendered their stock to the officers and demanded a return of their money paid therefor, at which time the officers assured petitioners that, if they would not take action, they would sell the property and refund them the amount they paid for the stock; and relying on these assurances, and similar ones made thereafter, and hoping to be reimbursed without litigation, they have neglected and omitted to take legal action until this time. Petitioners have lost faith in the officers of the corporation and their promises, and are thoroughly satisfied that it is not their purpose to sell the property and refund to them the amount they paid for stock in the corporation. The representations made by the officers and agents of the corporation, to induce petitioners to buy the stock, were made for the purpose of deceiving petitioners, and did deceive them into taking the stock, and

the officers and directors knew that the statements and representations were false. As a part of the scheme to deceive petitioners and to defraud them into purchasing the stock, they had a small pamphlet issued, setting forth the purposes and plans of the corporation, and stating the amount of capital stock and giving a list of the officers and directors. This literature was exhibited to your petitioners before they took the stock, and is a part of the deception practiced upon petitioners in luring them into the purchase of stock. The prayers of the petition were: That the defendants be restrained and permanently enjoined from encumbering, transferring, or hypothecating any of the assets of the corporation until this suit is finally determined. Petitioners ask for a judgment against each of the directors and officers individually, and also judgment against the corporation in so far as the same affects the lands or the funds arising from the sale thereof, and also judgment against all the defendants named in the petition. Petitioners (who were eight in number, and whose claims aggregated a principal sum of $8,355) asked judgment for the principal sum of their claims, with seven per cent. per annum interest thereon against all the defendants, jointly and separately; that the court adjudge and decree that the sums of money paid by petitioners and each of them, as set forth in the petition, have been invested in the lands as set forth in the petition and known as the Hays, Wilson, and Scott lands, making up a tract of about 270 acres; that the sums paid by petitioners and each of them be traced into the land, and that the exact amounts and the land in which the same were investsed be fixed by the judgment and decree of the court; and that the petitioners have judgment and decree with special lien fixed upon the lands, and, in case of sale of the lands, then upon the proceeds therefrom, in order that the lands be declared subject to the judgment of each and all of the claims, and that their claims be declared to constitute a first lien upon the lands for the payment of their claims.

The defendants filed their demurrer to the petition upon the following grounds, among others: (a) Because there is no cause of action set out in the petition. (b) Because it appears that the plaintiffs have not acted promptly in this matter, thus waiving the alleged fraud charged to have been perpetrated upon them. The court overruled all grounds of the demurrer, except paragraph 11,

which related to the allegations of the petition averring a forfeiture of the charter of the corporation; and the defendants excepted.

*Hines & Jordan,* for plaintiffs in error.

*I. F. Mundy, W. W. Mundy,* and *John A. Hynds,* contra.

HILL, J. (After stating the foregoing facts.)

1. One of the grounds of demurrer is, that the plaintiffs were in laches in not bringing the suit earlier. To this we can not agree. The petition alleges that the plaintiffs brought suit within eighteen months after they discovered the falsity of the representations made to them at the time they paid for their stock in the corporation; that when they made this discovery they tendered their stock to the officers of the corporation and demanded a return of their money paid therefor; that at this time the officers assured the plaintiffs that, if they would not take action, they (the officers) would sell the property and refund to the plaintiffs the amount they paid for the stock; and that relying upon these assurances and similar assurances thereafter made, and hoping to be reimbursed without litigation, the plaintiffs omitted to take legal action until the bringing of this suit. Under these circumstances, we do not think it can be said that the plaintiffs were in such laches as to bar a recovery. This is a suit to recover from the defendants the amount of money the plaintiffs subscribed for stock and paid to the defendants, and which they allege was fraudulently obtained from them. In such a case the plaintiffs would not be barred a recovery. This being so, we can not hold that the plaintiffs are in laches when they bring their suit within eighteen months after the discovery of the alleged fraud.

2. Is the petition in this case subject to the demurrers filed against it, or does it set forth a good cause of action? We think it is only necessary to read the allegations as contained in the foregoing statement of facts to arrive at the conclusion that the petition is brimfull of equity. We will not repeat those allegations in detail, but it may be well to mention in a general way a few of the facts relied on by the plaintiffs as a basis for recovery. The individual defendants here are alleged to be the agents and promoters of the corporation, the stock of which they sold to the plaintiffs. It is alleged that they represented to the plaintiffs that they had bought and paid for 270 acres of land, of an alleged valuation of $500,000, containing limerock, slate, shale, etc., from

which could be made as good cement as there is in the world; whereas the actual considerations paid for the land aggregated only $8,300, and in the deeds made to the corporation conveying the land false and fictitious considerations were named, aggregating $115,000. And it is alleged that the promoters—the individual defendants here—did not pay the $8,300 with their own money, but with the money of the plaintiffs derived from the sale of stock to them; and that the defendants had never paid for any stock themselves. It was further alleged that the officers of the corporation represented to defendants that a right of way for a railroad leading to the property had been secured; that valuable machinery with which to manufacture the cement, estimated to be worth $300,000, had been bought and shipped and the defendants had the money in hand to pay for it; and that the agents purchasing the machinery had saved the corporation $200,000 in the transaction. These representations on the part of the defendants are alleged to be untrue, and, on demurrer filed by the defendants themselves, they must be treated to be as alleged. If the allegations are to be thus taken, then the plaintiffs have been induced to part with their money by reason of false and fraudulent representations; and they now ask the aid of the courts to trace those funds into the lands and to recover the money back. And in order that they may recover, they ask the aid of the court to prevent the alienation of the land until a judgment can be obtained against the defendants, and to have a decree fixing a special lien on the land to secure its payment, and, in case of sale, upon the proceeds. As already said, the allegations of the petition are to be taken as true; and if they are true, the plaintiffs are entitled to recover on the trial, if the facts alleged are proved according to the rules of law applicable to such cases. Of course, if they are not true in fact, the plaintiffs can not prevail on the trial of the issues made by the pleadings. But the petition is not open to the objections urged against it by the plaintiffs in error. This is not a suit by stockholders against a legal corporation, but by subscribers to stock of a corporation alleged never to have been legally organized, who aver in effect that they have been inveigled by the agents and promoters of the corporation into subscribing for stock in a bogus concern by the fraudulent representations of the individual defendants named in the petition, and asking that the plaintiffs be allowed to trace the funds fur-

nished by them into certain lands, that they have a special lien decreed thereon, and for a judgment against the defendants named. We see no valid reason why this can not be done. The petitioners seem to have had the law applicable before their eyes when they drew their petition; for it is drawn in substantial conformity to the decision rendered in the case of *Stewart* v. *Rutherford,* 74 *Ga.* 435, where it was held: "Where the complainant did not seek any redress in the character of a stockholder or president, but sought to sever his connection entirely with it and to recover what he had been induced to put into it by fraud, it was not necessary that he should ask relief of the stockholders who perpetrated the fraud, before applying to equity to annul the contract." In the body of the opinion (on pp. 438-439) Chief Justice Jackson said: "The fraud is not a fraud of certain existing stockholders committed upon another, also already a member, nor is it a fraud by a corporation in existence upon one of its stockholders; but it antedates the existence of the corporation. It attacks the very contract which made the corporation, put into operation, and furnished the means to buy the thing to be operated upon, and the tools by which that thing, the mineral lots of land, was to be worked by the corporation to be afterwards created. One man, or a set of several men, can no more swindle and cheat another out of his money, in order to make a corporation and set it to work, than he or they could cheat and swindle him into any other contract or about any other thing. There is no such sanctity about a corporation that a natural person should be induced fraudulently by certain other natural persons to apply for this artificial person with them to be created by the State, and yet have no relief against those who thus cheated him, because the result of the cheating was success in creating the entity called an artificial person or a corporation. Nor does it matter one iota that the fraud made him a stockholder therein, or even the president thereof, to sweeten the pill with ambition gratified by putting him at the head of the corporation to be made. That some of the facts showing fraud in the antecedent contract transpired after the contract bore the fruit which its procurers by fraud intended, to wit, ripened into a corporation, can make no difference. If they throw light on the contract, and the conduct of those making it, and the motives leading to that conduct, it pours light upon the original transaction just as full as if it were contem-

poraneous or antecedent facts." We think the petition sets forth a good cause of action.

3. As we have pointed out in the preceding division of the opinion, the plaintiffs' allegations entitle them to relief. They also prayed relief by the appointment of a receiver; but when this case was before the court on a former occasion (*Georgia Portland Cement & Slate Co.* v. *Jackson,* 139 *Ga.* 668, 77 S. E. 1055), it was held that under the allegations of the petition the plaintiffs were not entitled to the appointment of a receiver. That decision, being in the same case, is controlling on that subject. The court, therefore, erred in overruling the special demurrer to that particular prayer for relief. In affirming the case, however, direction will be given that the judgment be so modified as to sustain the 6th ground of the demurrer.

The other grounds of the demurrer are without substantial merit.

*Judgment affirmed, with direction. All the Justices concur, except Fish, C. J., absent.*