*W. L. & Warren Grice,* contra.

---

GRESS *et al. v.* KNIGHT *et al.,* receivers, *et al.* (Six Cases.)

1. As between a stockholder and the corporation, unless special circumstances alter the case, the general rule that contracts obtained by fraud may be avoided by the party defrauded applies to a stock subscription induced by the fraud of the company through its authorized agents; and so likewise where only the rights of other shareholders are affected, the company being solvent and "a going concern."

2. If a person subscribes for stock in a corporation, and thereupon the company proceeds to do business upon the basis of the stock subscribed, and incurs indebtedness, the subscriber can not, after insolvency of the company and the appointment of a receiver, obtain relief on the ground of fraudulent representations of the agents of the company in securing his subscription, as against creditors thus obtaining rights, or a receiver representing them.

3. Where a subscriber for stock in a corporation seeks to set aside the subscription on the ground of fraud in its procurement, after a receiver has been appointed for the company, in determining whether he can do so it is to be considered what length of time has elapsed since the subscription was made; whether the subscriber has actively participated

in the management of the affairs of the corporation; whether there has been any lack of diligence on his part, either in discovering the fraud, or in taking steps to rescind after its discovery; and whether any considerable amount of corporate indebtedness has been created since the subscription was made, which remains outstanding and unpaid.

4. The interventions did not show on their face such facts of the character indicated in the preceding headnote as to render them subject to general demurrer.

5. None of the grounds of the special demurrer were properly sustained, except those which objected to the allegation that the bank owed "an item of about twenty thousand dollars of accrued interest," without stating to whom it was due or showing' any sufficient reason for the failure to do so; and the allegation that at least $75,000 of the loans and discounts set out in its statement were worthless, without any further specification.

AUGUST 13, 1910.

Equitable interventions.     Before Judge Seabrook.     Ware superior court.     May 10, 1909.

On November 23, 1907, the Bank of Waycross made an assignment for the benefit of its creditors. Later receivers were appointed. Certain persons intervened, alleging in brief as follows: The bank had long had an authorized capital stock of $50,000, of which $25,000 had been issued and fully paid up. On July 11, 1907, the capital stock was increased from $50,000 to $150,000. All of this was sold to or divided among the original stockholders, except about 250 shares of the par value of $100 per share. These shares were sold to new subscribers, including the intervenors. False and fraudulent representations were made by the bank and its agents to induce the taking of these shares, some being printed, some written and some oral,—each intervention stating those on which the intervenor relied. The dates of these purchases of stock ranged from August 1 to September 4. Each of the intervenors alleged reliance on the representations in taking the stock, and each intervention contained an allegation of this character: "Petitioner has never participated in any meeting of stockholders of said bank; that he has never been an officer thereof, and has never received or accepted any benefit of any character whatsoever from said bank or by reason of his ownership or possession of the said stock thereof." Some of them also alleged that they proceeded immediately upon the discovery of the fraud, and one set out specifically certain reasons why he could not have known of the fraud before the assignment. Some had paid for the stock, some had given notes therefor.

The prayers were for a rescission and other equitable relief. General and special demurrers were filed. They were sustained, and the interventions dismissed; and the intervenors each excepted.

*Toomer & Reynolds* and *Shelby Myrick,* for plaintiffs in error.

*Bennet & Conyers, Myers & Parks, S. W. Hitch, Wilson, Bennett & Lambdin, Lankford & Dickerson, Adams & Adams,* and *J. L. Sweat,* contra.

LUMPKIN, J.  1. In England it is settled that, after the commencement of winding up proceedings against a corporation, an application to be relieved from liability as a shareholder, on the ground of fraud practiced upon him by agents of the company in procuring the subscription, comes too late.  Oakes *v.* Turquand, L. R. 2 H. L. 325; Stone *v.* City & County Bank, 3 C. P. Div. 282. By the companies act of 1862 (Statutes at Large, 25 & 26 Vict. 434. secs. 23, 26, 37, 38) every company was required to keep a register of members or shareholders, showing the name and address of each, and the date of becoming a member and of ceasing to be a member; and a penalty was provided for a failure so to do. Once a year a list was required to be made up and forwarded to the public registrar.  The register of members was made prima facie evidence of what it was required to contain.  On winding up, every present and past member who had not ceased to be a member for a year was liable to contribute to the payment of debts.  How far the English decisions may have been affected by the requirements of that act need not be considered.

In this State there is no similar law.  The courts must determine the question by applying general principles of equity.  A stockholder occupies a threefold relation: First, to the corporation itself; second, to other stockholders; and third, to creditors of the corporation.  Fraud does not render a contract absolutely void, but voidable.  It remains valid until repudiated or avoided.  As between a stockholder and the corporation, unless special circumstances alter the case, the general rule that contracts obtained by fraud may be avoided by the party defrauded applies to a stock subscription induced by the fraud of the company through its authorized agents.  So also where only the rights of other shareholders are affected, the company being solvent and "a going concern." These matters are of comparatively easy solution.  But where the rights of creditors are involved, the question is one of greater diffi-

culty[1] Some American decisions have announced in general terms the rule laid down by the English courts; but in most of them additional circumstances existed, such as receiving benefits after knowledge or notice of the fraud, acts done, after notice or knowledge, inconsistent with a disaffirmance, laches, estoppel, the intervening of rights of innocent third parties, or the like. Thus in Chubb v. Upton, 95 U. S. 665, 667 (24 L. ed. 523), Mr. Justice Hunt said: "It has been several times adjudged in this court, that, in an action by such assignee to recover unpaid subscriptions upon stock in such an organization, the defense of false and fraudulent representations inducing such subscription can not be set up; especially when the subscriber has not been vigilant in discovering such fraud, and in repudiating his contract." It can not be easily determined just how far a rule laid down in general terms would be applied in the absence of the facts added to it under an "especially." In the case just cited Chubb was sued by an assignee in bankruptcy of the company. He sought to set up irregularities and informalities in the increase of capital stock to which he became a subscriber, and also fraud in the procurement of his subscription. It appeared that he was president of a branch of the company, took part in its meetings, paid money on his stock, and at one time gave a proxy to another person to attend and vote at a stockholders' meeting at the main office. He made no effort to cancel his subscription. The company incurred liabilities, and was adjudicated a bankrupt about fifteen months after his subscription. Clearly he should not have been relieved. In Upton v. Tribilcock, 91 U. S. 45 (23 L. ed. 203), the shareholder had delayed repudiating his subscription for three years and until an assignee in bankruptcy had been appointed, and there were other circumstances showing laches. Discussions of the subject will be found in 2 Thompson on Corporations, §§ 1440, 1449; Upton v. Anglehart, 3 Dill. 496 (Fed. Cas. No. 16800); Farrar v. Walker, Id. 506 (Fed. Cas. No. 4679), reported unofficially; Newton National Bank v. Newbegin, 74 Fed. 135 (20 C. C. A. 339, 33 L. R. A. 727, and note); Parker v. Thomas, 19 Ind. 213 (81 Am. Dec. 385, 401, note).[2] A number of American decisions are to the effect that where one subscribes to stock and the company proceeds to do business, incurs liabilities, and later fails and is adjudged a bankrupt, or its assets are placed in the hands of a receiver for the purpose of winding it up, no rescission will be

allowed, unless under exceptional circumstances. Thompson on Corporations, § 1450.

Turning now to the decisions in this State, in *Grangers' Insurance Co.* v. *Turner,* 61 *Ga.* 561, a subscriber proceeded by attachment to recover of the company the amount paid by him on his subscription before discovering the fraud. It was alleged that the stock was worthless. The defendant demurred to the declaration in attachment. The demurrer was overruled, and defendant excepted. It was held, that the action would lie; that if the fraud had been condoned by acquiescence or otherwise, or if such legal or equitable rights had attached in favor of creditors of the corporation as that the plaintiff could not, on that account, recede from his subscription, these matters could be shown; but that as they did not appear on the face of the declaration, it was not demurrable. In *Turner* v. *Grangers' etc. Ins. Co.,* 65 *Ga.* 649 (68 Am. R. 801), it was held, that, though a subscription to stock may have been induced by fraud, the subscriber could not recover the amount paid by him, if there were creditors to an equal or larger amount on debts contracted after his subscription. In that case, it was alleged that the stock was worthless, and that the defendant, a foreign corporation, had made an assignment. In *Hamilton* v. *Grangers' etc. Ins. Co.,* 67 *Ga.* 145, the ruling was approved. In *Stewart* v. *Rutherford,* 74 *Ga.* 435, the plaintiff had been induced by fraudulent means to join in obtaining a charter, entering into a venture and putting in money. He filed an equitable petition against the other members (who were alleged to be conspirators) and the company. It was held that equity would grant him relief, whether the company was insolvent or not. It was said: "Of course if innocent parties have been affected by the corporation during its operation, the court will protect them." In *Beck* v. *Henderson,* 76 *Ga.* 360, it was held, that, where a corporation had held itself out to the world and contracted debts on the faith of its organization, and a stockholder had stood. by and interposed no objection, he was bound, and in a suit by the receiver, on a promissory note given for the amount of his subscription to the capital stock, he could not successfully defend by showing fraud in procuring his subscription. In *Howard* v. *Glenn,* 85 *Ga.* 238 (11 S. E. 610, 21 Am. St. R. 156), it was held that if one became a stockholder in a corporation, though his subscription was obtained by

fraud, he would be liable to its creditors for so much of his unpaid subscription as, in connection with the amounts due by other corporators, might be necessary to pay its debts. The defendant, however, was an original corporator and subscriber, and whatever debts were incurred were made after his subscription.

When a person becomes a stockholder of a corporation, he becomes a part of it. Its agents are in a sense his agents. They go out and deal with the public. If through their dealings debts are incurred, assuming both the stockholder and the creditor to be innocent and that one must suffer, the former, who put it in the power of the agents to do the wrong, should suffer rather than third parties who dealt with such agents. Civil Code, § 3940. As to creditors whose claims arose after the stockholders became such, their rights are superior to any right of rescission. The status of a stockholder relative to creditors who became such after he took the stock, is not in all respects identical with that relative to antecedent creditors. As to creditors whose debts were created before he took the stock, questions of laches, acts inconsistent with rescission, estoppel, etc., might arise. The new stockholder may have permitted the increase of indebtedness and the lessening of the assets with which to pay. It does not affirmatively appear in this case whether debts were created after the intervenors became stockholders, or their amount. There was originally an allegation in each intervention, on information and belief, that all the creditors were the same as those existing before the new stock was issued; but this was stricken by amendment. We do not think that it can be said as matter of law that such laches or conduct on the part of the intervenors affirmatively appears on the face of the respective interventions as to authorize us to declare that no rescission could be had, whatever may be developed by the evidence. It was error to sustain the general demurrers. If the interventions were not otherwise demurrable, they did not become so by reason of failing to negative the existence of any debts incurred after they took their stock. That was matter of defense to the intervention, under the facts alleged. Most of the special demurrers were not meritorious. These were not original suits, but interventions in the main suit, where the assets, books, and memoranda were in the hands of the receivers. The special demurrers, if they were all sustained, would have required the attaching to each intervention of a large part of

the items from such books, in order to show insolvency, or that the representations that there were no overdrafts and that there was a large surplus, etc., were false. We do not think this was necessary. When the facts are shown, it can be made to appear whether a fraud was really perpetrated on each of the intervenors, whether there was any lack of diligence in discovering such fraud or unreasonable delay in seeking relief after its discovery, whether there was any active participation by the intervenors in the management of the corporation, or whether debts had been incurred after the intervenor became a stockholder, which either gave corporate creditors superior equitable rights or estopped the intervenor from denying that he was a stockholder, and generally whether his conduct was such as to prevent relief.

In three of the interventions (those of Mrs. Rigby, Knox, and Hay) it was not alleged in terms when the intervenors discovered the fraud. But the special demurrers, though containing thirteen grounds each, and making a variety of points, do not distinctly raise any question upon that ground. Under the allegations in the interventions, and in view of the short time from the taking of the stock to the assignment—less than four months in one instance, and still less in others, we do not think that for this reason they were subject to general demurrer. Some of the grounds rested upon the idea, that, though it was alleged that the intervenors were induced, by false and fraudulent published statements of the bank and oral statements of its officers (which were set out), to subscribe for the stock, and also that the intervenors had no other means of knowing the condition of the bank, the interventions were demurrable for not alleging that the intervenors demanded an inspection of the books and papers of the bank before taking the stock, or immediately afterward. Such allegations were not necessary.

Two grounds of the special demurrers only do we think should have been sustained. It was alleged that the bank owed "one item of about twenty thousand dollars of accrued interest." A ground of the demurrer made the point that it was not stated to whom this "item" was due. The point was well taken. It appeared to be a single item, and no reason is apparent why it should not have been described more definitely. But this should not have caused the sustaining of all the other grounds of demurrer general and special, and the dismissal of the interventions. Another ground of special

demurrer attacked the general allegation that at least $75,000 of the loans and discounts were worthless, with no specification as to them. This was well taken. Opportunity should be given to amend as to these points before dismissing any portion of the interventions for that reason.

*Judgment in each case reversed, with direction. All the Justices concur, except Beck, J., absent..*