4234.　SOUTHERN TOBACCO COMPANY *v.* ARMSTRONG.

1. An insolvent corporation can not enforce payment of a stock subscription from one who was induced by the fraud of the authorized agent of the corporation to make the subscription, if the subscriber was not guilty of laches in discovering the fraud, did not in any manner waive the fraud, and, within a reasonable time after the discovery of the fraud, repudiated his subscription contract before the corporation became insolvent and the rights of bona fide creditors had intervened.

2. Where a stock subscription has been induced by fraud, it is not necessary, in order to prevent rescission of the contract, that insolvency

proceedings be actually instituted, or some act of insolvency be committed by the corporation; but where the effect of the rescission would be to diminish the security of the bona fide creditors of the corporation, becoming such after the contract of subscription had been made, the rescission will not be allowed. What fraud creates, justice will destroy, provided that in the destruction greater injustice is not done to innocent third persons.

3. Where the president of a corporation, while holding an unrecorded mortgage covering the assets of the corporation, induces one, by falsely stating that there is no debt or lien against the corporation, to subscribe to its stock, he can not be heard, when the subscriber discovers the fraud and endeavors to rescind his contract of stock subscription, to object to the rescission, on the ground that it would affect his rights as a creditor of the corporation. The rule is universal that no man can take advantage of his own wrong.

4. Whether a subscriber to the stock of a corporation, who is endeavoring to rescind his subscription on account of fraud, has been guilty of laches in discovering the fraud, or delinquent in repudiating his subscription contract after discovering the fraud, or has waived his right to rescind after knowledge of the fraud, are all questions to be determined by the jury, under the facts of the particular case.

DECIDED SEPTEMBER 24, 1912.

Complaint; from city court of Richmond—Judge W. F. Eve. May 10, 1912.

This was a suit by the Southern Tobacco Company against James P. Armstrong, on a promissory note for $3,750. The note was given by Armstrong in part payment for fifty shares of the capital stock of the Southern Tobacco Company, he having paid for the stock $1,250 in cash in addition to the note. The defendant resisted payment of the note, on the ground that his subscription was procured by false and fraudulent representations, made to him by the president and the secretary of the corporation, the specific representations being that the total liability of the corporation consisted of preferred capital stock amounting to $250,000, and common stock amounting to $100,000, and that other than this stock liability the corporation had no liabilities of any character. He alleges that, relying upon the truth of the representations so made by the authorized agents of the corporation, he subscribed for and purchased fifty shares of the preferred stock of the corporation, paying therefor on account the sum of $1,250, and executed the note sued on for the balance; that before the note matured, he discovered that the representations made by the president and the secretary of the company to him to induce him to buy the stock were false and fraudulent;

that while the president stated to him specifically that there were no liens or mortgages on the property, he, the president, held an unrecorded mortgage for $150,000 against the company, payable to himself, which covered the entire assets of the company; that if he had known of the existence of this mortgage, he would not have subscribed for the stock; and that the failure of the president to disclose to him the existence of the debt secured by the mortgage, when specifically asked in reference thereto by him, amounted to such fraud as would release him from all liability on the note. In his plea he asked judgment against the plaintiff corporation for the $1,250 obtained from him through the perpetration of the fraud as set forth.

On the trial of the case the plaintiff amended its petition, by way of replication, by specifically denying all the allegations of fraud, and alleged that the defendant had been guilty of such laches in setting up the alleged fraud as would estop him from setting up that defense; also that after his subscription to the stock and after the time he claims to have discovered the alleged fraud and misrepresentations, he ratified his subscription by continuing to act as a stockholder of the corporation; that subsequently to the giving of the note sued on, for the balance owing on his subscription for the stock, the corporation created a large amount of debts, many of which were outstanding and unpaid, approximating as follows: Bonds, $100,000; banks, $10,388; other obligations, $9,615; and that the assets owned by the corporation were not sufficient, when the stock subscription was made by the defendant, to pay this outstanding indebtedness, and the corporation was then, since, and now is, insolvent, and it was necessary, for the benefit of the creditors of the corporation, to collect the amount owed by the defendant on this note; and that even, therefore, if the allegations of the defendant as to fraud and misrepresentations as set out in his answer were true, it would amount to no legal defense to this suit.

The defendant offered testimony to prove that the corporation was insolvent at the time of the stock subscription and at the time suit was brought on the note; and this testimony was excluded by the court, on the ground that, as the suit was brought by the corporation, and not by its creditors, and as the corporation was a going concern, such evidence was immaterial; that this de-

fense could only be material in a suit brought by creditors of the corporation, either by an assignee or a receiver. Error is assigned as to this ruling. The jury returned a verdict for the defendant for $1,250, and the plaintiff's motion for a new trial was overruled.

*William H. Barrett,* for plaintiff.

*C. H. & R. S. Cohen,* for defendant.

HILL, C. J. (After making the foregoing statement.)

1. The principal question raised by the record has been well settled by frequent adjudications both in England and in this country. Mr. Justice Lumpkin, in the recent case of *Gress* v. *Knight,* 135 *Ga.* 60 (68 S. E. 834, 31 L. R. A. (N. S). 900), after reviewing different adjudications on the subject, and especially the decisions of the Supreme Court of this State relating thereto, lays down the following legal principles: (1) "As between a stockholder and the corporation, unless special circumstances alter the case, the general rule that contracts obtained by fraud may be avoided by the party defrauded applied to a stock subscription induced by the fraud of the company through its authorized agents; and so likewise where only the rights of other shareholders are affected, the company being solvent and a going concern." (2) "If a person subscribes for stock in a corporation, and thereupon the company proceeds to do business upon the basis of the stock subscribed, and incurs indebtedness, the subscriber can not, after insolvency of the company and the appointment of a receiver, obtain relief on the ground of fraudulent representations of the agents of the company in securing his subscription, as against creditors thus obtaining rights, or a receiver representing them." (3) "Where a subscriber for stock in a corporation seeks to set aside the subscription on the ground of fraud in its procurement, after a receiver has been appointed for the company, in determining whether he can do so it is to be considered what length of time has elapsed since the subscription was made; whether the subscriber has actively participated in the management of the affairs of the corporation; whether there has been any lack of diligence on his part, either in discovering the fraud, or in taking steps to rescind after its discovery; and whether any considerable amount of corporate indebtedness has been created since the subscription was made, which remains outstanding and unpaid." It will be seen, from Mr. Justice Lumpkin's resumé of the decisions, that all the cases cited by him

were cases in which the proceedings were instituted against the stockholder in favor of creditors of the corporation. In each case the plaintiff was either a receiver, an assignee, or a trustee, or the corporation had ceased to be a going concern, or the subscriber had paid his money into the corporation treasury, and subsequently brought suit to recover the money so paid in, on the ground that it was procured from him by fraudulent representations made by authorized agents of the corporation. It may be stated then, as a well-settled principle, founded in equity, justice, and law, that where the suit is between the corporation and a subscribing stockholder, and no invasion of rights of creditors is involved, the defense of fraud would be a good defense to recovery on a note given for the stock subscription, but where rights of creditors are involved, and debts have been incurred by the corporation after the subscription, and, on the faith of the subscription, credit has been extended to the corporation, that as against such creditors the defense of fraud would not be good.

2. This leaves in the present case only one general question to be decided which is not fully controlled by the decision of the Supreme Court in *Gress* v. *Knight,* supra; and this question is as to the meaning of the term "insolvency of the corporation." It will be noted that in that decision Mr. Justice Lumpkin states the proposition that a subscriber can not, after the insolvency of the company and the appointment of a receiver, obtain relief on the ground of fraudulent representations of the agents of the company in securing his subscription, as against creditors thus obtaining rights, or a receiver representing them. The question is: Can a subscriber obtain relief on the ground of fraud, although the corporation may be in debt, where no insolvency proceeding of any kind has been instituted against it, and where the corporation is still a going concern? In the case of Newton National Bank *v.* Newbegin, decided by the United States Circuit Court of Appeals of the eighth circuit (74 Fed. 135, 20 C. C. A. 339, 33 L. R. A. 727), the learned judge uses the following language in discussing this subject: "There are obvious reasons why a shareholder of a corporation should not be released from his subscription to its capital stock after the insolvency of the company, and particularly after a proceeding has been inaugurated to liquidate its affairs, unless the case is one in which the stockholder has exercised due

diligence, and in which no facts exist upon which corporate creditors can reasonably predicate an estoppel. When a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the rôle of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion. If a considerable period of time has elapsed since the subscription was made; if the subscriber has actively participated in the management of the affairs of the corporation; if there has been any want of diligence on the part of the stockholder, either in discovering the alleged fraud, or in taking steps to rescind when the fraud was discovered; and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid; in all of these cases the right to rescind should be denied, where the attempt is not made until the corporation becomes insolvent. But if none of these conditions exist, and the proof of the alleged fraud is clear, we think that a stockholder should be permitted to rescind his subscription as well after as before the company ceases to be a going concern." See, also, Hinkley *v.* Sac Oil and Pipe Line Co., 132 Iowa, 396 (107 N. W. 629, 119 Am. St. Rep. 564) ; Fear *v.* Bartlett, 81 Md. 435 (32 Atl. 322, 33 L. R. A. 723). In the case of Fear *v.* Bartlett, supra, it was held that the doctrine that unpaid subscriptions to the capital stock of a corporation was a trust fund for the creditors has no application until the corporation becomes insolvent; and, in the course of the opinion, the learned judge said that the right to rescind may be exercised (assuming diligence) unless "proceedings of insolvency, voluntary or involuntary, have been instituted, or some act done that in law is regarded as an act of insolvency." Not until then does the entire property of the corporation, including unpaid subscriptions to its capital stock, become a trust fund for the payment of its debts, and not until then are the creditors entitled to the payment of their debts before there can be any distribution among the stockholders.

Unquestionably the rule is the same in England as in America, that a stockholder can not, after bankruptcy or insolvency, rescind his subscription for fraud. 10 Cyc. 441. Can a subscriber rescind for fraud if the fact of insolvency exists, where no proceedings of insolvency have begun, or payment of debts of the corporation has not been stopped by reason of its insolvency? While some of the

decisions which we have just cited seem to indicate that this can not be done, yet we are inclined to the view that the sounder rule is that wherever a corporation incurs debts after the subscription to the capital stock has been made, and the fact of insolvency, by reason of these debts, exists, the right of a creditor would be superior in dignity to the right of a subscriber to rescind for fraud. Indeed, some authorities go to the extent of holding that where the debts of the corporation, even though it is a going concern, exceeded the amount of the subscription, the defrauded stockholder can not rescind. This seems to be the decision of the Supreme Court of Georgia in *Turner* v. *Grangers Insurance Co.*, 65 *Ga.* 649 (39 Am. Rep. 801), where it is expressly held that though a subscription to stock may have been induced by fraud, the subscriber could not recover the amount paid, if there were debts contracted after his subscription. The underlying principle for the rule here discussed is that creditors of corporations have superior rights to the assets of the corporation, including its capital stock. And as expressed by Mr. Morawetz, in his admirable work, "It has been settled that if a corporation is insolvent, a shareholder whose contract of subscription was obtained by fraud of the company's agents can not diminish the security of bona fide creditors by rescinding his contract to contribute to the amount of capital stock subscribed to by him." Morawetz, Corp. (2d ed.) § 595. And see 1 Thomp. Corp. § 737, and cases there cited.

On the trial of this case the plaintiff offered evidence to show that debts were incurred by the corporation subsequently to the defendant's subscription to the capital stock, and that these debts were still in existence, and that by reason thereof the corporation was insolvent, and that it was necessary to collect the subscription sued for and represented by the note, in order to pay these debts. The learned trial judge repelled this testimony, on the ground that the suit was by the corporation itself, and that there was no proof that when the subscription was made the corporation had ceased to be a going concern, and that, to constitute a bar to the rescission, suit should be brought by a creditor, through an assignee or receiver. In other words, he ruled out the testimony as to the fact of insolvency. We think the testimony was admissible, for we are clearly of the opinion that the sounder rule, as above indicated, is, that wherever the fact of insolvency exists,

there can be no rescission for fraud; or, as expressed by Justice Lumpkin in *Gress* v. *Knight,* supra, as to creditors whose claims arose after the stockholders became such, their rights are superior to any right of rescission. The reason for the rule is that when a person subscribes to the capital stock of a corporation, he must be held to contemplate that the corporation shall incur debts and pledge its capital, including the liability of its members for unpaid capital, as security; that the creditors who in good faith trust the corporation upon the faith of this security stand in the position of innocent purchasers for value, to the extent of their equitable lien; and that it would be unjust to permit a shareholder to disaffirm his contract and refuse to pay his share of the capital stock after it had been thus pledged with his knowledge and consent to innocent third persons. 1 Thomp. Corp. § 737. What fraud creates, justice will destroy, provided that in the destruction greater injustice is not done to innocent third persons.

3. It is insisted by learned counsel for the defendant that the special facts of this case entitle the defendant, in equity and good conscience, to rescind his contract of subscription and to be paid back the amount of cash paid on his subscription, notwithstanding the rule as above stated. It is claimed that the corporation was rendered insolvent by reason of the existence of a debt of $100,000, which was secured by a mortgage on all its assets, and that this mortgage was held by the authorized agent, to wit, the president of the corporation, who had induced him, by false representations of the company's solvency, to purchase the fifty shares of the company's capital stock; in other words, that the outstanding debts of the corporation were due to the very party, acting as agent of the corporation, who committed the fraud against him, and that it would be inequitable and unjust, in view of these facts, to permit the creditor who stood in such relation to him to prevent a rescission of his contract of subscription. The argument strikes us with great force, and if the testimony offered was limited to this debt of $100,000 held by the president, we would be inclined to hold in favor of the contention of the defendant. But the testimony offered included, in addition to this debt of $100,000, other debts amounting to $20,000. These debts are much greater in amount than the subscription made by the defendant to the capital stock of the company, and it is alleged that these debts were

incurred after the subscription had been made. If these facts were shown, and it was further shown that by reason of this $20,000 debt the company was insolvent, the principle of the rule which we have discussed would apply, and there could not be, legally and equitably, a rescission by the defendant; and for this reason, we reverse the judgment of the court below, in order that these questions may be determined.

4. It was insisted on the part of the plaintiff that, even conceding that the alleged fraud was perpetrated on the defendant, yet his long delay in asserting his rights, and his active participation in the affairs of the corporation after he discovered the existence of the debts, would estop him from now setting up his rights. This was a question of fact for the jury to determine, and, as the evidence was in conflict, both on the question as to diligence and the question as to participation by the defendant as a stockholder in the management of the affairs of the corporation, after the discovery of the fraud which he claimed had been perpetrated against him, this court can not say that on these points the verdict in favor of the defendant was not authorized.

We grant a new trial in the case because of the error of the trial judge in excluding the evidence offered to prove the insolvency of the corporation. The exceptions to the charge of the court, and to the refusal to charge as requested, are, we think, without merit.                              *Judgment reversed.*