### 10836

### STEELE, RECEIVER, v. SINGLETARY

### (110 S. E. 833)

1. CORPORATIONS—STOCK SUBSCRIPTION NOT DELIVERED IS AN EXECUTORY CONTRACT.—A stock subscription, unexecuted by payment and by delivery of the certificate, is an executory contract, and governed by the law applicable to such contracts.

2. CORPORATIONS—MISREPRESENTATION OF MATERIAL FACT BY AUTHORIZED AGENT AVOIDS STOCK SUBSCRIPTION.—A false representation of a material fact made by an authorized agent of the corporation to induce a subscription to the corporate stock avoids such subscription.

3. CORPORATIONS—FALSE STATEMENTS AS TO PROSPECTS AND CAPABILITIES OF CORPORATION MATTERS OF OPINION AVOIDING STOCK SUB-

SCRIPTION.—False statements relative to the prospects and capabilities of the corporate enterprise are matters of opinion, which do not authorize annulling a subscription for corporate stock thereby obtained.

4. EVIDENCE—STOCK SUBSCRIPTION CONTRACT SUBJECT TO PAROLE EVIDENCE RULE.—A stock subscription contract in writing, containing promises as to the policy of the corporation, and assuring the subscriber certain benefits, is subject to the parole evidence rule like other contracts.

5. CORPORATIONS—STATEMENTS REPRESENTING PROMISES AS TO POLICY OF CORPORATION AND BENEFITS TO A SUBSCRIBER MUST BE MADE A CONDITION AND INCLUDED IN WRITTEN SUBSCRIPTION CONTRACT TO BE ENFORCEABLE.—Statements representing promises as to the policy of a corporation and agreements, assuring a stock subscriber of certain future benefits, must be made a condition and incorporated in the written subscription for capital stock of the corporation to entitle a subscriber to enforce them.

6. CORPORATIONS—FALSE STATEMENTS THAT ALL STOCK WAS ISSUED FOR VALUE AND CORPORATION WAS MANUFACTURING PRODUCT ARE MATERIAL MISREPRESENTATIONS OF FACT.—False statements by an authorized agent of a corporation in producing a subscription for capital stock that all the stock theretofore issued and that which would be issued in the future would be paid for at par by money or services, as required by Civ. Code 1912, § 2799, and that the corporation was at that time engaged in manufacturing its product, are material misrepresentations of facts which entitle subscriber to rescind his subscription.

7. CORPORATIONS—FALSE STATEMENTS THAT STOCKHOLDERS WOULD BE ALLOWED TO PURCHASE PRODUCT AT FACTORY COST AND WOULD RECEIVE STATED DIVIDEND HELD NOT MISREPRESENTATIONS OF FACT WHICH COULD BE RELIED ON.—False statements by an agent of a corporation in procuring a stock subscription contract that the stockholders would be permitted to purchase their fertilizer from the corporation at factory cost, and that the company would pay 9 per cent. dividends, are not misrepresentations of fact which can be relied on by the subscriber in defense to an action upon his note given for the stock.

8. CORPORATIONS—FAILURE TO DELIVER STOCK CERTIFICATE DOES NOT ENTITLE SUBSCRIBER TO CANCEL SUBSCRIPTION.—The failure of a corporation to deliver the certificate for stock does not entitle the subscriber to cancel his subscription or defeat his note for the price of the stock on the ground of failure of consideration; his remedy being to enforce the obligation of the corporation to deliver the certificate.

9. CORPORATIONS—RECEIVER ACQUIRES GREATER RIGHTS AGAINST STOCK-
HOLDER DEFAULTING IN SUBSCRIPTION ONLY THROUGH LATTER'S
LACHES.—A receiver of a corporation is the successor in title to
the corporation, and also a trustee for its stockholders and credit-
ors, and in the latter relation he may enforce against a stock-
holder a note given for the purchase price of the stock, notwith-
standing the stockholder's defense against the corporation of fraud-
ulent misrepresentations, provided the subscriber has not acted
with due diligence in discovering the fraud and repudiating the
subscription, and a considerable amount of indebtedness was con-
tracted after the subscription was made.

10. CORPORATIONS—FACTS ENTITLING RECEIVER TO AVOID DEFENSE OF
CORPORATION'S FRAUD IN PROCURING SUBSCRIPTION NOTE STATED.—
Before a receiver of a corporation can enforce against a stock-
holder a note for the purchase price of the stock procured from
the stockholder by the corporation's fraud, he must show that
the corporation was insolvent, that the subscriber was estopped
by his conduct or laches from raising the question against the
receiver as trustee of the creditors, and that a considerable amount
of indebtedness has been contracted since the subscription was made.

Before MEMMINGER, J., Florence, May 1921. Re-
versed and remanded.

Action by J. B. Steele, as Receiver of Planters Fertili-
zer & Oil Co., against John G. Singletary. From order
sustaining demurrer to the answer, and giving judgment
for plaintiff by default the defendant appeals.

*Messrs. Royall & Fulton,* for appellant, cite: *Demurrer
admits allegations of fact*: 97 S. C., 413; 98 S. C., 162;
108 S. C. 364. *Receiver steps into shoes of corporation,
subject to all rights and liabilities*: 34 Cyc., 192, 388, 405;
146 U. S., 499. *Judge cannot assume facts not alleged*:
72 S. C., 137; 80 S. C., 432. *Cases in which Receiver will
be appointed*: Pom. Eq. Juris., Secs. 1332-35; 34 Cyc., 76-
87. *No presumption of insolvency where not alleged*: 54
Pac., 540. *Insolvency does not impair right of subscriber
to rely on fraud as ground for rescission*: 10 Cyc., 441;
14 C. J., 601; 2 Thomp. Corps., Secs. 1449-1453; 7 R. C.
L., "Corporations," Sec. 211; 33 L. R. A., 721; 26 S. E.,

591; 160 Fed., 573; 119 Am. St. Rep., 564. *And this may be asserted unless estopped by conduct or by laches*: 2 Thomp. Corps., Secs. 1453-54; 1 Cook Corps., Sec. 164; 14 C. J., 600; 7 R. C. L., Secs. 211, 214; L. R. A., 1915-D 792; 58 Am. St., Rep., 249; 37 Am. St. Rep., 879; 21 Am. St. Rep., 156; 38 Am. Rep., 801; 20 S. E., 68, 182; 26 S. E., 591; 41 S. E., 182; 61 S. E., 628 S. E., 834: 60 Fed., 117; 160 Fed., 117; 212 Fed., 878; 217 Fed., 287. *Estoppel*: 33 L. R. A., 727; Pom. Eq. Juris., Sec. 805; 97 S. C., 116; 12 S. C., 350; 13 S. C., 370; 57 S. C., 507; 67 S. C., 432; 67 S. C., 457; 96 S. C., 106; 104 S. C., 163; 111 S. C., 49. *Need not be affirmatively plead*: 27 S. C., 226; 8 S. C., 329; 93 S. C., 190; 101 S. C., 462. *But party relying on estoppel must prove it*: 17 S. C., 249; 35 S. C., 88; 67 S. C., 432; 96 S. C., 106; 104 S. C., 332. *Estoppel is for jury*: 35 S. C., 88; 52 S. C., 408; 84 S. C., 426; 89 S. C., 391. *In receivership estoppel can only operate in favor of creditors*: L. R. A.,1915-D, 792. *Laches not affirmatively shown in answer and must be proven*: 43 S. C., 426; 52 S. C., 104; 62 S. C., 88; 72 S. C., 503; 76 S. C., 170; 90 S. C., 90; 97 S. C., 224; 106 S. C., 310; 111 S. C., 376; 14 C. J., 597; 7 R. C. L., Sec. 214; 33 L. R. A., 727; L. R. A., 1915-D, 792; 61 S. E., 628. *Laches need not be affirmatively pleaded*: 62 S. C., 88; 106 S. C., 310. *Burden of proof on Receiver in this case*: 14 C. J., 597; 44 Am. St. Rep., 939. *Laches of subscriber is a bar to plea of fraud*: 1 Cook Corp'ns, Secs. 161, 162; 2 Thomp. Corps., Secs. 1454, 1455; 7 R. C. L., Sec. 213; 14 C. J., 596. *Plaintiff must show knowledge by defendant of fraud to constitute estoppel*: 77 S. C., 535; 114 S. C., 130. *Laches*: 58 S. C., 491; 13 S. C., 370; 98 S. C., 162; 61 S. C., 628.

*Mr. Capers G. Barr*, for respondent, cites: *Party cannot assume an inconsistent position in judicial proceedings*: 16 Cyc., 796; 23 S. C., 96. *And are bound by allegations in*

*their own pleadings*: 31 Cyc., 87; 37 S. C., 489; 31 S. C., 420. *Same principle applicable on appeal*: 31 Cyc., 89; 53 Mich., 479. *Pleading to merits admits capacity of plaintiff*: 5 Pet., 141; 11 Pet., 351. *New matter by way of defense must be pleaded*: 10 S. C., 438; 58 S. C., 30; 4 S. C., 48; 9 S. C., 582. *Corporation available against corporation may not be available against Receiver*: 34 Cyc., 406-7; 6 Him. (N. Y.), 164; 1 N. Y. City Cl. Sup., 30; 93 Pac., 523. *Fraud by promoters will not relieve one subscriber as against the others*: 33 L. R. A., 726. *Nor available against rights of creditors:* 85 Ga., 238; 1 Tex. Civ. App., 58. *Nor can subscriber set up secret special agreement*: 7 R. C. L., Sec. 235. *Too late to plead fraud after suit by Receiver:* 7 R. C. L., 214; 33 L. R. A., 726, note. *Mere delay may be sufficient to defeat right to rescind*: 76 Ga., 360; 91 U. S., 45; 17 Ves., 87; 12 C. L. & F., 248; 14 C. J., 598-601. *Subscriber cannot set off claim against corporation*: 55 S. C., 78; 96 S. C., 432.

February 27, 1922.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action upon a promissory note, signed by the defendant, dated July 26, 1918, due 30 days after date, amount $400, payable to himself and indorsed to the Planters Fertilizer & Oil Company, of which company the plaintiff was appointed Receiver by order of Court dated June 18, 1920.

The defendant alleges in his answer that the note was given in payment of a subscription made by him to the capital stock of the said corporation, five shares par value $100 per share; that he paid $100 cash, and gave said note for the remainder of his subscription; that his subscription was procured by an authorized agent of the corporation upon the representations: (1) That the entire amount of stock authorized, including that already issued, was to be

paid for at par value in cash, service, or property at actual value; (2) that the corporation was at that time actually manufacturing fertilizer and fertilizer material; (3) that the subscriber would be given the opportunity to buy at factory prices his pro rata share of fish scrap produced by the corporation; (4) a guaranty that the stock would pay an annual dividend of 9 per cent.

He further alleges that said representations were false, and knowingly so; that capital stock in a large amount had then been issued, or was soon thereafter issued, for which no value was paid either in service or otherwise; that the corporation was not at that time manufacturing fertilizer or fertilizer material; that the corporation has never manufactured any fish scrap or other commodity, or been in a position to offer its stockholders any fish scrap or other fertilizer material.

He further alleges that upon the payment of the $100 cash and the execution of said note he was entitled to receive stock of the par value of $500; that it has never been issued to him; that the subscription was for that reason without consideration, and that he is entitled to a cancellation of said note, and by way of counterclaim to judgment for the $100 cash paid, with interest from July 26, 1918, at 7 per cent.

To this answer the plaintiff interposed a demurrer upon the ground that it did not state facts sufficient to constitute a defense or counterclaim. The demurrer was sustained by the Circuit Judge, the answer was stricken out, and judgment directed for the full amount of the note in favor of the plaintiff. From this order and judgment the defendant appeals.

The first question to be determined is whether or not the facts stated in the answer are sufficient to constitute a defense and counterclaim, considering the action as one between the corporation and the subscriber.

A subscription to the capital stock of a corpora-
tion, unexecuted by payment and delivery of the
certificate of stock, is an executory contract, and
governed by the law applicable to such contracts; a false
representation of a material fact, made by an authorized
agent of the corporation to the subscriber, which induced
the contract, avoids it, as fraud does every contract. In
analogy to the law of obtaining property under false pre-
tenses, the distinction must be observed between statements
relative to the prospects and capabilities of the enterprises
and statements representing facts which do not exist. The
former are matters of opinion merely which do not con-
stitute grounds for annulling the contract; the latter are
material representations which are fraudulent, and do con-
stitute grounds for annulment.

As is clearly expressed in 1 Cook on Corp. (6th Ed.),
§ 145:

"Any false statement by the authorized agents of a cor-
poration in regard to the past or present status of the cor-
porate enterprise or material matters connected therewith,
whereby subscriptions are obtained, is a fraudulent repre-
sentation.

"Thus, a false statement that a certain amount of stock
had been subscribed for; or that a certain property had
been purchased; that the corporate property is unincum-
bered; that the corporation is solvent and prosperous;
that the stock had a certain value; that other stock-
holders had paid for their stock the same price; that the
company was a *bona fide* corporation and not a mere 'dum-
my'; that the directors have subscribed for stock; that cer-
tain individuals are directors; or as to the nature of the
business to be undertaken; or, in England, where the memo-
randa or articles of association are different from the pros-
pectus; or that work on the enterprise had reached a cer-
tain stage of completion; or that a certain price had been

paid for property when in fact a large part of the price went to promoters; or that the objects of the enterprise set forth in the subscription contract were of a certain nature, the subscriber not reading or hearing, and not being able to read, the contract or other material misstatements of fact have been held to constitute a fraudulent representation entitling the subscriber induced thereby to subscribe to the remedies provided for him by law in such cases. In all these cases, however, the distinction between statements relative to the prospects and capabilities of the enterprise, and statements specifically specifying what does or does not exist, must be carefully borne in mind. The former are matters of opinion; the latter are material representations, and are fraudulent if false."

A distinction must also be observed between statements which represent facts which do not exist, material facts which induce the subscription, and certain promises as to the policy of the corporation and agreements assuring the subscriber certain future benefits. The latter the subscriber may insist upon, provided they be made a condition of his subscription and incorporated in his contract. When that contract is in writing it is subject to the same rule as to parol evidence that all other contracts are subject to. As is said in 1 Cook Corp. (6th Ed.), § 81:

"Under the general rule of evidence that a written agreement cannot be varied or added to parol evidence, it is not competent for a subscriber to stock to allege that he is but a conditional subscriber. The condition must be inserted in the writing in order to be effectual."

The first ground upon which the defendant relies to avoid his contract of subscription is the alleged representation that the stock issued was paid for at par value in cash, or in services or property at actual value; that as a matter of fact capital stock in a large

amount had been issued for which no value was paid either in services or otherwise.

The subscriber had the right to assume, without a rep-. resentation to that effect, that the corporation had complied with the provisions of Section 2799, Vol. I, Code of Laws, A. D. 1912, prohibiting the issue of stock "except for money paid, property delivered, or labor done," the plain purpose of which was to accord "equal rights" to all stockholders. To do otherwise was a manifest wrong to the subscriber who paid in cash. The representation was, therefore, of a very material fact not a promise, which naturally had its effect upon securing the defendant's subscription. Certainly if the truth had been known, it may be safely assumed that it would not have been given.

The second ground is the alleged representation that the corporation was at that time actually engaged in manufacturing the product, which was the purpose of its organization: that as a matter of fact it was not so engaged and never had been. If these allegations be true, and upon demurrer they must be assumed to be true, they constitute a misrepresentation of a very material fact, not a promise, which naturally had its effect upon securing the defendant's subscription.

The third ground above stated was no more than a promise, and if not included within the terms of the subscription cannot avail the defendant. The same may be said of the fourth ground.

The suggestion that the contract of subscription is without consideration for the reason that no certificates of stock were issued to him when he paid the $100 and gave his note for $400 is without merit, as he had the right to enforce compliance with this obligation on the part of the corporation; it is no ground for canceling the contract.

As we have endeavored to show, the grounds upon which the defendant should be permitted to contend that his contract should be annulled are those based upon the alleged misrepresentations that the capital stock issued had been paid for in money or services or property at its actual value, and that the corporation was at the time actually engaged in manufacturing fertilizer. As between him and the corporation these misrepresentations, if established, would unquestionably avoid the contract.

But a further serious question arises: Has the subscriber the right to set up these alleged misrepresentations as a bar to an action brought by the Receiver of the corporation, upon the subscription? A Receiver occupies a double relation. He is the successor in title to the corporation; all of its assets are transferred to him, and the general rule is that he takes those assets with the burdens resting upon them; no better title than the corporation had. He is also a trustee for the stockholders and the creditors of the corporation; and it may happen that, as an incident of that trust relation, he is immune from certain defenses, in an action upon a chose in action of the corporation, which the corporation would be bound by if it were the plaintiff in the action.

There is great contrariety of opinion among the authorities and decided cases as to the extent of this immunity when a subscriber to stock defends an action upon his subscription upon the ground of misrepresentation by an authorized agent of the corporation, when the action is brought by a Receiver of an insolvent corporation.

Many cases hold that the Receiver stands in the shoes of the corporation, and is bound by whatever would have bound the corporation. Many others have adopted what we consider the more just rule, that if the subscriber has acted with due diligence in discovering the fraud and in repudiating his subscription, and no considerable amount

of indebtedness was contracted after the subscription was made, he may set up the fraud in exoneration of his liability. This is upon the theory that one may not be permitted to allow himself to be classed as a debtor to the corporation, his obligation be reported as an asset of the corporation, and thus mislead prospective creditors dealing with the corporation upon the faith thereof. It is upon the principles of estoppel and laches. As is forcibly expressed in the case of *Newton National Bank v. Newbegin*, 74 Fed., 135, 20 C. C. A., 339, 33 L. R. A., 727:

"If a considerable period of time has elapsed since the subscription was made; if the subscriber has actively participated in the management of the affairs of the corporation; if there has been any want of diligence on the part of the stockholder, either in discovering the alleged fraud, or in taking steps to rescind when the fraud was discovered; and, above all, if any considerable amount of corporate indebtedness has been created since the subscription was made, which is outstanding and unpaid—in all of these cases the right to rescind should be denied, where the attempt is not made until the corporation becomes insolvent."

See *Gress v. Knight*, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.), 900, and full notes thereto.

It follows from this principle that before the Receiver may be allowed to destroy the defense of fraudulent misrepresentations in procuring the subscription it must be made to appear: (1) That the Receiver was appointed of an insolvent corporation; (2) that the subscriber is estopped by his conduct, laches, or otherwise from raising the question against the Receiver as a trustee of the creditors; (3) that a considerable amount of debts have been contracted after the subscription was made. In this case the complaint does not show, nor does the answer admit, that the Receiver was appointed for the corporation by reason of its insolvency. There are various

other grounds for the appointment of a Receiver besides the insolvency of the corporation. The question of the defendant's conduct, laches or otherwise, should have been submitted to a jury. There is no showing that a considerable amount of debts have been contracted since the subscription was made. The Circuit Judge was, therefore, in error in sustaining the demurrer, and should have allowed the amendment asked for by the defendant.

The judgment of this Court is that the judgment of the Circuit Court be reversed and that the case be remanded to that Court for a new trial.

MR. JUSTICE WATTS did not participate on account of illness.