(112 So. 518)

No. 27889.

## HUNSICKER v. GILHAM.

March 28, 1927. Rehearing Denied April 25, 1927.

*(Syllabus by Editorial Staff.)*

1. Corporations ⟜80(12)—**One fraudulently induced to purchase corporation stock may, while corporation is solvent, rescind contract and recover money paid.**

One who is induced by fraud to purchase stock in corporation may, while corporation is solvent, rescind contract and recover money paid, unless for some special reason, such as laches, he has precluded himself from doing so.

2. Corporations ⟜80(12)—**One fraudulently induced to buy stock in insolvent corporation may recover amount paid from receiver, in absence of laches and subsequent creditors' claims.**

Where plaintiff was fraudulently induced to buy stock in insolvent corporation by false representations as to its financial condition and was not guilty of laches in discovering fraud, and there were no creditors whose claims were subsequent to hers, she may recover amount paid from receiver with interest from judicial demand.

3. Corporations ⟜80(10)—**Purchaser of stock in insolvent corporation held not guilty of laches in failing to discover fraud in representations inducing purchase.**

Purchaser of stock in insolvent corporation *held* not guilty of laches in failing to discover fraud in false representations as to financial condition of corporation which induced purchase, where she inquired as to condition before purchase and afterwards, when, as employee, she found that orders for her department were not filled.

4. Corporations ⟜566(5)—**One fraudulently induced to purchase stock in insolvent corporation held not entitled to preference over ordinary creditors in recovering amount paid from receiver (Civ. Code, arts. 21, 3185).**

One fraudulently induced to purchase stock in insolvent corporation has no right to preference over ordinary creditors in recovering amount paid from receiver, where all creditors did not receive proportionate part of purchase money, in view of Civ. Code, art. 3185; article 21 being inapplicable.

5. Corporations ⟜80(12)—**Interest on price of stock in insolvent corporation, recovered back for fraud inducing purchase, held to run from judicial demand.**

Interest on purchase price of stock in insolvent corporation, recovered back by one fraudulently induced to buy such stock, *held* to run from judicial demand rather than date money was paid, since plaintiff was stockholder until she repudiated transaction.

Appeal from Ninth Judicial District Court, Parish of Rapides; R. C. Culpepper, Judge.

Suit by Mrs. M. Hunsicker against Paul A. Gilham, receiver of Hardtner, Incorporated, in which several creditors of the corporation intervened. Judgment for plaintiff, and receiver appeals. Amended and affirmed.

Lamar Polk and Bruton T. Dawkins, both of Alexandria, for appellant.

Thornton, Gist & Richey, of Alexandria, for appellee.

OVERTON, J. This is a suit to rescind a sale of stock of the par value of $4,000, made by Hardtner, Inc., to plaintiff (Hardtner, Inc., being at the time of the institution of the suit in the hands of a receiver), and to recover judgment against the receiver for $4,000 paid by plaintiff for the stock, with 5 per cent. per annum interest on $2,000 thereof from November 15, 1924, and on the balance from December 2, 1924, and for judgment against the receiver ordering him to pay plaintiff said amount, with interest thereon, by preference and priority over all other persons, and especially over ordinary creditors.

The demand to rescind the sale and recover the amount paid for the stock is based upon two grounds, only one of which we find it necessary to mention. That ground is based upon allegations to the effect that Hardtner, Inc., was insolvent at the time plaintiff subscribed and paid for the stock; that she subscribed for it on false and fraudulent representations, made to her by the officers and agents of the company to induce her to buy the stock, which representations she believed to be true; that these representations, were made by J. H. Brewer, general manager, and E. R. Simpson, buyer and merchandise man, and were to the effect that the company owed no past-due bills, that it was in good and solvent condition, and that its assets greatly exceeded its liabilities, including its outstanding capital stock. The demand for payment of the $4,000 by preference and priority is based upon allegations to the effect that the $4,000 was used by the company for the purpose of paying its debts, and therefore inured to the benefit of the creditors and entitles plaintiff to a privilege on the company's assets.

The defenses, tersely stated, are an exception of no cause of action, a denial that Hardtner, Inc., was insolvent at the time plaintiff purchased the stock, a denial that the false representations, alleged by plaintiff, were made, and averments to the effect that plaintiff was guilty of laches in discovering the fraud alleged by her; and, moreover, that plaintiff, having permitted her name to remain on the records of the company as a stockholder, for a considerable length of time, without repudiating the transaction, is estopped from urging her demand. Defendant was joined in urging these defenses in the trial court by several creditors, who intervened for that purpose, but who have not appealed from the judgment rendered.

It appears that Hardtner, Inc., was organized in the early part of 1923. The object of its creation was to conduct a general mercantile business in the city of Alexandria. Its capital stock was fixed at $100,000, and of this amount $67,500 was originally subscribed. The corporation opened its store, and apparently from the very beginning it began losing money. Plaintiff had accumulated several thousand dollars as the proprietor of a restaurant in Alexandria; and the manager of Hardtner, Inc., learning that plaintiff had some money which she probably wished to invest, and that she probably desired a position, as she was no longer in the restaurant business, sent for her. When she arrived he introduced her to Simpson, who was merchandise man and general supervisor of the store under Brewer. Simpson asked plaintiff whether she had ever had any experience in the mercantile business, and she replied that she had not. Simpson then told plaintiff that Brewer had informed him that she had been in business for herself, and that what they needed was some one with business judgment to take charge of the ladies' ready-to-wear department, and whether she thought she could

take charge of it. Plaintiff replied that she thought she could learn, and Simpson then told her that heads of departments were expected to subscribe for stock in the company. Plaintiff, at first, demurred to subscribing, but a few minutes later, offered to subscribe for $500 of stock. This was unsatisfactory to Simpson, and he replied that the lady who accepted that position would be expected to subscribe for $5,000 of stock and he told her that the company, during the time in which it was in business, had made some money and was in position to declare a dividend on the 1st of January. Simpson referred plaintiff to Brewer for confirmation, and Brewer told her that these statements were correct. Plaintiff then said she would consider the matter and return later. A few days later she went to the store and asked Brewer for exact figures of the standing of the company, and he replied that an inventory of the stock had just been completed, and that the stock on hand amounted to $71,000. Plaintiff then asked Brewer whether the company owed any past-due accounts, and he replied that it had just had a sale, at which it realized $14,000, and had paid every account that was due. Plaintiff then replied that, based on these figures, she considered the business a good one, and would subscribe for $5,000 of the stock. A day or two later, a contract was signed by which the company bound itself to employ plaintiff as saleslady, in the ladies' ready to wear department, and to discharge such duties in that department as might be directed from time to time by the merchandise manager. The contract fixed plaintiff's salary at $100 a month up to January 1, 1925, and thereafter, at $125 a month until September 1, 1925. After that time, the salary was to be adjusted by agreement between the parties. The contract, after thus providing, recites that plaintiff, "of her own will and accord" has made application to invest in stock in the Hardtner, Inc., the sum of $5,000, and further recites that, in the event her services should not prove satisfactory and she should be discharged, the subscription would be canceled, and the money paid by her for the stock would be returned. Stock of the par value of $2,000 was paid for about the middle of November, 1924, and other shares of the same par value were paid for in the early part of December, 1924, making $4,000 paid by plaintiff under her subscription. Stock to that amount was issued to her, which is the stock involved in this suit. The remaining $1,000 of the stock subscription was never paid, and the stock for that amount was never issued. Plaintiff was released from that part of the subscription.

A few days after the contract was signed, plaintiff entered upon the discharge of her duties. She noticed from the beginning that, almost without exception, goods ordered for her department failed to arrive. Inquiring of the manager as to the cause, and especially whether their nonarrival was due to refusals to fill the orders because of past-due bills, she was assured that it was not because of such bills, but because of certain prejudices that were being taken advantage of to harass the company in its business. As orders were from time to time refused, she made inquiry as to the cause, but each time was lulled into a sense of security and was assured that there were no past-due bills. The condition of the business was kept from her until the store was placed in the hands of a receiver, and even then she was assured that it would be worked out.

On March 21, 1926, less than five months after plaintiff was induced to subscribe for the stock, the board of directors of the company passed a resolution declaring that the company was unable to meet its obligations as they matured, and declaring that the appointment of a receiver was necessary. A few days later, upon the application of a

creditor, based upon this resolution, a receiver was appointed.

The evidence is conflicting as to the conditions of the company at the time plaintiff was induced to buy the stock, and as to some of the representations made. However, it satisfies us abundantly that Brewer and Simpson represented to plaintiff that the company was solvent, owed no past-due bills, was making money, and had a surplus on hand, out of which a dividend could be declared, when, as a matter of fact, the company was then insolvent, owed past-due bills, was steadily losing money, and had nothing out of which it could legitimately declare a dividend, and that these facts were known to Brewer and Simpson at the time.

[1] From the foregoing, it would seem that plaintiff was fraudulently induced to purchase the stock. The question is, Can she obtain relief under the circumstances? There can be no question that, if one is induced by fraud to purchase stock in a corporation, he may, while the corporation is solvent, rescind the contract and recover the money paid by him, unless for some special reason, such as laches, he has precluded himself from doing so. In this case, however, plaintiff did not discover the fraud, repudiate the contract, and sue to recover the money paid by her until after a receiver had been appointed by reason of the inability of the corporation to meet its indebtedness as it matured. The question is therefore presented whether plaintiff may recover judgment under these circumstances.

[2] In our view, where the victim of the fraud has not discovered the imposition until insolvency has ensued, where it does not appear that any of the indebtedness against the corporation was contracted subsequent to the subscription, where the one imposed upon has not been guilty of laches in discovering the fraud and in suing for relief, and has done nothing to preclude a recovery,

he is entitled to relief. Not to permit a recovery in these circumstances would be not only to deny to the victim, who has used due diligence to protect himself, the right to relief, but it would be to permit the creditors of the corporation, whose claims existed when the fraud was committed, to profit by the fraud, when they could suffer no legitimate injury by permitting a recovery. It would be otherwise, although it appeared that the victim used due diligence to discover the fraud, if it appeared that the corporation has indebtedness against it, contracted subsequent to the subscription, without knowledge of the fraud, for then the equities of the creditors, whose claims so arose, would be superior to those of the victim. In this view, we think we are supported by Newton Nat. Bank v. Newbegin, 20 C. C. A. 339, 40 U. S. App. 1, 74 F. 135, 33 L. R. A. 727; Gress v. Knight, 135 Ga. 60, 68 S. E. 834, 31 L. R. A. (N. S.) 900. We are also supported in this view by the following from 14 C. J., § 872, p. 602 (which, in addition to the Gress Case, supra, cites other authorities), to wit:

"A subscriber not guilty of laches may rescind on discovery of the fraud after insolvency of the corporation if no debts have been contracted by the corporation since he became a stockholder, or if for any other reason rights of subsequent creditors are not involved."

[3] We are of the opinion that plaintiff is entitled to recover. In our view, she has not been guilty of laches, nor has she done anything that would preclude her from recovering, nor does it appear that there are any creditors, whose claims arose subsequent to her subscription. In fact, as to the existence of subsequent creditors, it appears that, at the time plaintiff subscribed, the company was evidently hard pressed for money, that almost without exception orders from it were being declined, and that its stock of merchandise, at the time of the ap-

pointment of a receiver, was greatly reduced from what it was when plaintiff subscribed. If any subsequent creditors exist, that fact does not appear.

[4] Plaintiff, as we have seen, sues to be paid by preference over all other creditors, at least over all ordinary creditors. In other words, she sues to be recognized as a privileged creditor. She bases her claim, for payment by preference, on the fact that the money paid by her went to pay the company's creditors, and that they should not be permitted to profit by the fraud practiced by the corporation. But even so, it does not appear that all of the present creditors received a part of the money, and received it in proportion to their claims. Moreover, privileges exist only when expressly granted by law. Civil Code, art. 3185. Plaintiff concedes that there is no express law granting a privilege for the repayment of money paid by one for corporate stock when the sale of the stock is rescinded for fraud, and it may be said that there is none, but plaintiff asks for the privilege, under article 21 of the Civil Code, which requires the judge to decide according to equity where there is no express law. Here, however, there is express law, to wit, article 3185, cited supra, which as much as says, though in different words, that no such privilege exists.

[5] The trial court rendered judgment for plaintiff for the $4,000 paid by her for the stock, with 5 per cent. per annum interest from the dates she made the payments, and ordering her to be paid by preference over all ordinary creditors. The judgment will have to be amended as to the order for payment by preference and as to the dates from which interest is allowed. Plaintiff did not become a creditor of the corporation until she repudiated the transaction and sued to recover the money paid by her. Up to that time, she occupied the position of a stockholder. The interest therefore should run from judicial demand.

For the reasons assigned, the judgment appealed from is amended by disallowing plaintiff's demand for payment by preference and by making the interest on said indebtedness run from judicial demand, instead of from the dates of the payment of said money, and that said judgment, in all other respects, is affirmed, appellee to pay the costs of this appeal.